CLARK v. ARIZONA MUT. SAVINGS & LOAN ASS'N et al. (DENNETT et al., Interveners).

(District Court, D. Arizona. March 12, 1914.)

1. JUDGMENT (§ 349*)—POWER OF COURT AT SUBSEQUENT TERM TO VACATE—
VOID JUDGMENTS.
While a court has no power to vacate, modify, or amend a valid judgment or decree after the term at which it was entered, all courts have the inherent power to vacate at any time their own judgments rendered without, or in excess of, jurisdiction.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 685; Dec. Dig. § 349.*]

2. JUDGMENT (§ 15*)—JURISDICTION TO RENDER—CONFORMITY TO ISSUES.
Although a court has jurisdiction of the subject-matter of an action and of the parties, its power to render a valid judgment is nevertheless limited by the nature of the suit and the issues made by the pleadings, and if it transcends such limits its judgment is without jurisdiction and void.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 22, 23; Dec. Dig. § 15.*]

3. JUDGMENT (§ 248*)—CONFORMITY TO PLEADING.
A suit by a stockholder against the corporation and another, brought on behalf of himself and all other stockholders, in which the bill alleges a fraudulent transfer by its officers of all of the property and assets of the corporation to its codefendant, and prays that such transfer be set aside and the property restored, that an accounting be had between the defendants and between the corporation and its stockholders, that a receiver be appointed and the affairs of the corporation be wound up and its assets distributed to those found to be entitled thereto, is a suit for an injury to the corporation and to enforce a right of the corporation for the benefit of all of its stockholders, and a decree finding that the transfer of the property was fraudulent, but confirming the title in the transferee, and adjudging that complainant, or other stockholders who have intervened and adopted the allegations and prayer of his bill, recover from defendants the several amounts they had paid into the corporation, and making the same a lien on the transferred property, was not authorized by due course of procedure, and is outside the issues and void as to stockholders who were not before the court, but had a right to expect such course of procedure to be followed and their rights protected.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. § 248.*]

4. JUDGMENT (§ 342*)—DECREE IN EXCESS OF JURISDICTION—POWER OF COURT
TO VACATE.
In such case the court has power at a subsequent term to vacate the decree, and to enter a decree in conformity to the pleadings and findings.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 668–671; Dec. Dig. § 342.*]

In Equity. Suit by Charles W. Clark against the Arizona Mutual Savings & Loan Association and the Arizona Trust Company. On

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

motion of John Dennett, Jr., and others, interveners, to dismiss petition of other persons for leave to intervene. Motion overruled, and interlocutory decree entered.

William M. Seabury, of Phœnix, Ariz., for plaintiff and interveners.
Robert E. Morrison, of Prescott, Ariz., and Joseph E. Morrison and Richey & Dick, all of Phœnix, Ariz., for Waring and others, stockholders of Arizona Mut. Savings & Loan Ass'n.
Stoneman & Ling, of Phœnix, Ariz., for receiver.

SAWTELLE, District Judge. This is a bill in equity, brought by Charles W. Clark, a citizen of the United States and a resident of the state of California, against the Arizona Mutual Savings & Loan Association and Arizona Trust Company, corporations organized and existing under the laws of the state of Arizona. The bill is brought by plaintiff as a stockholder in said loan association, in his own behalf and in behalf of all other stockholders in said association similarly situated, and seeks to have an attempted transfer by said loan association to said trust company of all of its assets annulled and declared void and held for naught, and prays for an accounting between the two defendant companies, for the appointment of a receiver of said loan company, that its affairs be wound up, and its assets distributed to those found to be entitled thereto. The bill was filed on July 15, 1912. Plaintiff filed his written order to dismiss said bill on August 6, 1912, but 10 days prior to the time of filing said order of dismissal the above-named John Dennett, Jr., and others, as stockholders of said loan association, filed their petition for intervention herein, adopting the allegations of said original bill, and the court declined to dismiss the cause.

On February 27, 1913, the then judge of said court entered a decree in favor of said interveners for the amount by each of them paid into said loan association, and impressed the assets so attempted to be transferred to said trust company with a trust and lien in favor of each of the said interveners to the extent and amount by them paid into said association. On July 15, 1913, after the adjournment of the term of said court at which said decree of February 27, 1913, was entered, numerous other stockholders filed their petition, in which they adopted the allegations of said original bill and asked leave to intervene in said cause and to be permitted to share in the distribution of the assets of said loan association. Said John Dennett, Jr., and the other interveners mentioned in said decree of February 27, 1913, have filed their motion to dismiss said petition on the ground that this court has no authority or jurisdiction to grant the said petition for intervention, or to alter, modify, or change said decree of February 27, 1913.

This cause came on to be heard during a very busy term of the court, and it was not practicable at that time, without neglect of other important duties, to prepare a written opinion. The substance of the views set out below were announced orally from the bench, and the reasons here assigned were those which influenced the court in its decision. They are now set out more at length:

[1] If this court did not, in entering the decree of February 27, 1913, transcend the powers conferred upon it by law, and did not exceed its jurisdiction, then this court has no authority or jurisdiction, after the

term at which said decree was rendered and the judgment therein entered, to vacate, modify, or amend said decree or judgment, and it will become the duty of this court to sustain the motion to dismiss the petition of July 15, 1913, and to deny the prayer of the said petitioners to intervene. On the other hand, all courts have the inherent power to vacate at any time their own judgments rendered without or in excess of jurisdiction. Pollitz v. Wabash R. Co. (C. C.) 180 Fed. 950, and cases cited. The vital question, then, is whether this court exceeded its jurisdiction on the pleading and proof then before it in entering the decree of February 27, 1913.

[2] It may be admitted as elementary, and as settled by undisputed authority, that a decree which finally determines the equities of the parties before the court in a case where the court has jurisdiction of the subject-matter and of the parties, when the parties are before the court, and the issues determined and within the issues made by the pleadings and according to due course of law, become a finality upon the expiration of the term at which it is rendered, and the court cannot at a subsequent term vary, alter, or amend it, except to correct clerical errors. But it does not follow from this that any decree which a court may render is after the expiration of the term at which it is rendered, beyond the power of the court. I refer to a few cases of the Supreme Court of the United States in which this subject is discussed. In the case of Standard Oil Co. v. Missouri ex rel. Hadley, 224 U. S. 280, 32 Sup. Ct. 409, 56 L. Ed. 760, Ann. Cas. 1913D, 936, the court says:

"For even if a court has original general jurisdiction, criminal and civil, at law and in equity, it cannot enter a judgment which is beyond the claim asserted, or which, in its essential character, is not responsive to the cause of action on which the proceeding was based. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a.libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. * * * The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases.' Windsor v. McVeigh, 93 U. S. 274, 282, 23 L. Ed. 914, 917. See, also, Reynolds v. Stockton, 140 U. S. 265–268, 11 Sup. Ct. 773, 35 L. Ed. 467–469; Barnes v. Chicago, M. & St. P. R. Co., 122 U. S. 1, 14, 7 Sup. Ct. 1043, 30 L. Ed. 1128, 1132."

Speaking on this subject in the case of Windsor v. McVeigh, 93 U. S. 274–282 (23 L. Ed. 914), the court says:

"The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise .on navigable waters, or relate to the testamentary

disposition of estates; or to the use of particular process in the enforcement of their judgments. Norton v. Meador, Circuit Court for California. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases. See the language of Mr. Justice Miller, to the same purport, in the case of Ex parte Lange, 18 Wall. 163 [21 L. Ed. 872]. So it was held by this court in Bigelow v. Forrest, 9 Wall. 341 [19 L. Ed. 596], that a judgment in a confiscation case, condemning the fee of the property, was void for the remainder, after the termination of the life estate of the owner. To the objection that the decree was conclusive that the entire fee was confiscated, Mr. Justice Strong, speaking the unanimous opinion of the court, replied: 'Doubtless a decree of a court, having jurisdiction to make the decree, cannot be impeached collaterally; but, under the act of Congress, the District Court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest (the owner). Had it done so, it would have transcended its jurisdiction.' So a departure from established modes of procedure will often render the judgment void. * * * The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it. The statement of the doctrine by Mr. Justice Swayne, in the case of Cornett v. Williams, reported in 20 Wall. 250, 22 L. Ed. 254, is more accurate. 'The jurisdiction,' says the justice, 'having attached in the case, everything done *within the power of that jurisdiction*, when collaterally questioned, is held conclusive of the rights of the parties unless impeached for fraud.' "

In Barnes v. Chicago, etc., Railway, 122 U. S. 1–14, 7 Sup. Ct. 1043, 1050 (30 L. Ed. 1128), the court says:

"Every decree in a suit in equity must be considered in connection with the pleadings, and, if its language is broader than is required, it will be limited by construction so that its effect shall be such, and such only, as is needed for the purposes of the case that has been made and the issues that have been decided. Graham v. Railroad Co., 3 Wall. 704 [18 L. Ed. 247.]"

In Reynolds v. Stockton, 140 U. S. 265, 11 Sup. Ct. 773, 35 L. Ed. 467, the court uses this language:

"The inquiry is: Had the court jurisdiction to the extent claimed? Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment, arising from the fact that the matter decided was not embraced within the issue, has not, it would seem, received much judicial consideration; and yet I cannot doubt that, upon general principles, such a defect must avoid a judgment."

The court then proceeds to discuss the validity of a judgment which is not embraced within the issues, and says:

"A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. * * * The matter in issue' has been defined in a case of leading authority as 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading.' King v. Chase, 15 N. H. 9 [41 Am. Dec. 675]. But without multiplying authorities, the proposition suggested by those referred to, and which we affirm, is that in order to give a judgment, rendered by even a court of general jurisdiction, the merit and finality of an adjudication between the parties, it must, with the limitations heretofore stated, be responsive to the issues tendered by the pleadings."

A judgment must accord with and be warranted by the pleadings of the party in whose favor it is rendered; if it is not supported by the pleadings, it is fatally defective. 23 Cyc. 816, and cases cited. There are many cases in the state courts which decide the same questions, but as the decisions of the Supreme Court are decisive of the issue it has not been thought necessary to cite them.

[3] Let us examine the pleadings to ascertain what are the issues in the case. The bill was filed by a stockholder in the loan association, on behalf of himself and all other stockholders who might decide to come in and join in the suit. Its fundamental equity is the wrongful transfer of assets of the loan association to the trust company, and the fundamental relief prayed for is the restitution of the assets of the loan association to the corporation, or to the receiver of that corporation, to be distributed to its stockholders on its dissolution by order of the court.

Let us look to the allegations of the bill filed in this cause, which are adopted by the interveners mentioned, and whose names are set out in the decree of February 27, 1913. It is alleged, among other things, that the complainant is one of the many stockholders in said loan association who are the holders and owners of certificates of stock therein, and as such are entitled to all the rights, privileges, and property of such stockholders, and that said rights, among others, include the right of complainant and all other stockholders similarly situated to participate in all of the assets of the defendant loan association, and upon the dissolution thereof to receive such, if any, of the property as may remain undistributed as the property of the defendant loan association after it had discharged all of its obligations; that the officers of said association, knowing that the same was insolvent and unable to meet its obligations, and without the knowledge of complainant and many others similarly situated, entered upon a fraudulent and corrupt agreement with certain persons for the organization of the Arizona Trust Company, for the purpose of taking over the assets and property of the loan association; that a pretended directors' meeting and stockholders' meeting, at which the loan association, in consideration of 1,300 shares of the capital stock of the trust company, agreed to deliver to the trust company all of the said loan association's assets and property; that said loan association had no right to convey all or any of its assets to the said trust company, and that the said transfer was in fact a corrupt scheme; that the loan association was insolvent, that

its officers knew this fact, and that they were trustees for the benefit of the complainant and the other stockholders similarly situated, and that the assets were impressed and charged with a trust for the benefit of the stockholders; that there was a close and intimate relationship of trust and confidence existing between the officers of the defendant trust company and the officers of the loan association, and that it was their duty to safeguard and protect the interests of complainant and other stockholders; that these officers violated their duties of trust and confidence, and dealt with the property belonging to the loan association for their own private and selfish ends, and without the slightest benefit to either the loan association or its stockholders; that the transfer of the assets of the loan association to the trust company was fraudulent and void; that at the time the trust company had no assets or property or any kind or character, and had none at the time it entered into the agreement with the loan association, and that the 1,300 shares of stock of the trust company had no value of any kind or character, and that the assets of the loan association were intermingled with the assets of the trust company in a deliberate and premeditated attempt to secure the assets and property of the loan association at a sacrifice of the rights of its stockholders; that it was impossible to determine the rights and equities of complainant and the other stockholders of the loan association without a judicial accounting between both of the defendant companies, and that the officers and directors be compelled to account for their official misconduct in the matters set forth; *and for that reason* complainant brings this bill in equity in his own behalf, and in behalf of all others similarly situated, to the end that the transactions above herein set forth, made between the defendants above named, be annulled and declared void and held for naught, and to the end that an accounting may be had between the two defendants, and between the loan association and other stockholders similarly situated, that a receiver be appointed to take charge of and administer the assets of the loan association, that others similarly situated, who may desire to intervene, be permitted to do so, and that they be awarded such relief as to a court of equity may seem proper.

The prayer of the bill was: (1) That the transactions between the defendants be declared void; (2) that a restitution of all the assets of the loan association by the trust company be decreed; (3) that an accounting between the defendants be had; (4) that an accounting between the loan association and the complainant and those other stockholders similarly situated be decreed; (5) that a receiver for the loan association be appointed to reduce its assets to possession; (6) that a master be appointed to take evidence of the facts alleged in the bill "and to determine the rights and equities of complainant and *all of the parties concerned herein*"; (7) "that the affairs of the said defendant loan association *be wound up, its assets marshaled as aforesaid, and distributed to those found to be entitled thereto.*"

The petitioners mentioned in the decree of February 27, 1913, expressly state in their petitions of intervention that they adopt the allegations of the bill of complaint, and desire to be permitted to intervene in support of the allegations. These petitions then allege the circumstances under which the petitioners were induced to exchange their

stock for the stock of the trust company, and their prayer is, in addition to the prayer of the bill: (1) That they be allowed to intervene and pray in accordance with the form of complainants' bill; (2) that they be restored to their status as stockholders in the loan association; (3) that a restitution of the assets be decreed against the trust company.

Answers were filed by the loan association and by the trust company, which asserted the validity of the transfer and denied all charges of fraud.

*It is plain that this was a stockholders' suit for an injury done to the corporation,* and the decree must be such as is authorized by the due course of procedure in such a case. All of the stockholders had the right to expect that such procedure would be followed, and that, upon a dissolution of said loan association and a distribution of its assets as prayed for in said bill, their interests would be fully protected. *It is equally plain that the avails of such a suit belong to the loan association,* and are for the joint and equal benefit of *all* of its stockholders. It is said in Cook on Corporations (6th Ed.) p. 2426:

"It is a well-established rule of law that a stockholder's suit to remedy a wrong done to the corporation must be in behalf of all the stockholders, since they are equally interested in the results of the suit."

" 'An injury done to the stock and capital by negligence or defeasance is not an injury to such separate interest, but to the whole body of stockholders in common.' " Id. p. 2429, note 1.

"Money or property recovered from directors or third persons, in a suit in equity instituted by a stockholder in behalf of all the stockholders, belongs to all the stockholders and not to the complaining stockholder. It goes to the corporation. The decree must be for the benefit of the corporation and not for the complainant stockholders." Id. p. 2431.

See, also, Howe v. Barney (C. C.) 45 Fed. 668.

"When a stockholder sues in equity to enforce a right belonging to the corporation, or to enjoin or redress an injury to the corporation, all the stockholders are interested in the result of the suit. It is not for his own benefit alone, but for the benefit of all the stockholders, and it must therefore be brought on behalf of the complainant, and all the stockholders other than such, if any, as are made defendants." Clark & Marshall, Private Corporations, vol. 2, p. 1708, and cases there cited.

"Such a suit can only be maintained on the ground that the rights of the corporation are involved. * * * The relief asked is on behalf of the corporation, not the individual shareholder, and if it be granted the complainant derives only an incidental benefit from it." Id. p. 1709.

"If a suit brought by a stockholder on behalf of himself and the other stockholders is based upon fraudulent or wrongful acts or neglect on the part of the *directors or other stockholders, they must be made parties defendant, so that* they may have an opportunity to defend, *and so that redress or relief may be given against them.*" Id. p. 1710.

There is not in the bill, nor in any of the petitions for intervention, any prayer that the transfer of the assets of the loan association be confirmed; but, on the contrary, the allegations of all the pleadings are that such transfer is fraudulent and corrupt, and the prayer is for a restitution of the assets to the loan association or its receiver. There is no pleading to support the decree in this particular. There is no allegation in the bill or the petitions that a restitution would be impossible or work a hardship to innocent stockholders.

It is alleged that at the time of the said transfer the trust company

was insolvent and paid nothing of value for the assets of the loan association, and that the whole transaction was a fraudulent scheme. Then, why vest the title in the trust company? The effect of this transfer was to subject all the assets of the loan association remaining after the payment of the interveners' preferred lien to the obligations of the insolvent trust company, thus leaving the shares of stock of the remaining stockholders valueless.

This part of the decree is contrary to the usual course of procedure in such cases and without pleading to support it. It is nowhere alleged or shown that any of the stockholders in the decree of February 27, 1913, had been guilty of any act or omission which deprived them of their equal rights in the assets of the loan association. Paragraphs 7 and 8 of said decree are as follows:

"Seventh. And to the end that the rights of all of the interveners herein and of the outstanding stockholders in the defendant loan association who never exchanged their stock therein for stock in the defendant trust company may be adequately preserved and protected, the court hereby confirms the sale and transfer of all the assets of the defendant loan association to the defendant trust company, and adjudges that complete title is vested in the defendant trust company of, in, and to all of the assets and properties of whatsoever kind or nature heretofore owned by the defendant loan association, subject only to the lien and charges hereinafter specified.

"Eighth. And for the further protection of the rights of the said interveners and the said stockholders in the defendant loan association who never exchanged their stock therein for stock in the defendant trust company, the court adjudges and determines that all of the assets and properties now or hereafter owned or acquired by the defendant trust company be, and they hereby are, impressed with the trust and lien in favor of each of the said interveners named herein to the extent and amount set opposite the names of each, and in favor of the stockholders in the defendant loan association who never exchanged their stock therein for stock in the trust company for the amounts heretofore paid in by such last named persons in the following names and amounts: [Then follows a list of the names, with the amount set opposite each name.]"

If it be admitted that in this class of cases the avails of the litigation belong to the corporation defrauded, and not to the complaining stockholders, then it seems to me that the learned judge erred in entering the decree of February 27, 1913. The said decree with great particularity gives the lien and declares the trust for the benefit of certain named stockholders, which the record shows are not the only persons who are stockholders of the loan association and therefore entitled to share in its assets. There is no law which authorizes the court to charge the entire property of the loan association with a lien and trust in favor of a part only of said stockholders, and leave the losses and the expenses of litigation to be borne by the remaining stockholders.

Again, the said decree is conflicting in its provisions. In adjudging a fee of over $3,000 to the attorney for the interveners in this case, who was also originally the attorney of the plaintiff filing the bill, but which complainant is not mentioned in said decree of February 27, 1913, the court must have found that he rendered services which entitled him to a claim against the corporation itself, and which was a proper charge against the avails of the litigation which he had conducted, for the decree directs that this fee shall be paid out of the

·funds belonging to the corporation in the hands of the receiver. If the services were not rendered for the corporation, and if the avails of the litigation which he conducted did not inure to its benefit, then the court was not authorized to pay him out of the funds which belonged to the corporation. Such compensation should have come from the interveners or from funds which belonged to them alone.

One provision of the decree limits the liens granted by it to the interveners named therein, while another provision gives the attorney for the same interveners a substantial fee out of funds to which they had no interest, and which did not diminish the amounts to be received by them. Furthermore, if this was not a stockholders' suit for the benefit of the corporation and all of its stockholders, then unquestionably every stockholder whose name is not mentioned in said decree of February 27, 1913, should have been made a party defendant in the cause and given his day in court.

No provision for the losses incurred in the business of the loan association is made by this decree, though it is held by said decree that this association is and was insolvent, and the court approves and decrees the transfer of all of its assets, charging these assets with liens in favor of persons who were only stockholders therein, and who are compelled to equally bear its losses and entitled to share in its assets only on an equality with all of its stockholders. Certainly all the stockholders must share equally in the losses and profits of the association, yet this decree expressly relieves the interveners and nonexchanging stockholders from any share of these losses or expenses, and leaves them to be borne by the stockholders who are not parties to the decree. Such an advantage is warranted by neither the law nor the pleadings in this cause.

The transfer of said assets is declared to be fraudulent and void *as to the parties named in the decree,* and that the stockholders who exchanged their stock in the loan association for stock in the trust company and subsequently became interveners were induced to exchange their said stock "in reliance upon representations theretofore made to them in the printed literature of one or both defendants, and by verbal statements made to them by the representative of the defendants, and that such representations were in fact false, and were known by the defendants to be false when made, and induced the said interveners to make the exchange of their said stock as aforesaid."

It thus clearly appears that the company was guilty of fraud in the transfer of its assets and in the inducements held out to all of its stockholders to exchange their stock. The answers of the defendants show that the same representations were made to all the stockholders and deny their fraudulent character. Yet on the pleadings the court decrees that the parties to the decree shall be paid their claims in full, every cent that they have paid into the association, and be relieved from all losses incurred in the business of said insolvent loan association and from the expenses of this litigation, including their own counsel's fees. No opportunity is given any creditor of the loan association to present his claim, and other stockholders are given no opportunity to assert their equities in the assets of the corporation.

[4] In view of these things, I am constrained to hold that the said decree of February 27, 1913, entered by the then judge of this court, was beyond the powers of said court under the issues raised by the pleadings, and that the court departed from the usual mode of procedure to the detriment of the stockholders not a party to said decree. I am likewise of the opinion that the court was without authority in this case to vest the title of the assets of the loan association in the trust company, charged only with the said lien, and that such action is of no legal effect. For these reasons, said decree cannot be held to be a final determination of the equities raised by the pleadings, or to be beyond the power of this court to modify it as the equities require.

It is therefore ordered that the decree of the 27th day of February, 1913, be and the same is hereby modified as follows:

It is ordered that all the properties and assets, of every kind and description, which were transferred to the trust company by the loan association, be restored to the said loan association, or the receiver for said loan association, and that all contracts, conveyances, and agreements which were entered into by the said loan association or its agents or officers be and the same are hereby set aside, vacated, and annulled.

It is further ordered that the trust company transfer and deliver to the receiver in this cause all property of every kind received by it, its officers or agents, from or on account of the transfer of the said assets of the said loan association, or received by it from the use and investment or other disposition of any moneys or other property of the said loan association.

It is further ordered that this cause be referred to Edwin F. Jones, standing master of this court, to state the account between the loan association and the trust company, and to that end he shall hear testimony and may examine and inspect all papers on file in this court, or in the hands or possession of the receiver in this cause.

It is further ordered that the said standing master ascertain and report the exact amount due by said loan association to each of its stockholders, and in order to do so he is directed to publish a notice in some newspaper in the city of Phœnix, for at least five times, requiring all persons claiming to be stockholders in said loan association to file their claim, with proof thereof, with him within thirty (30) days from the first publication of such notice, and that he send by mail to each of the stockholders of said loan association a copy of such notice.

It is further ordered that the said standing master report on the priorities or equities of all persons claiming to be interested in the property of the said loan association and the order in which same are to be paid out of the assets of the said loan association.

It is further ordered that the master report what are the rights of said loan association in any assets now in the hands of persons not parties to this suit, and whether or not same can be recovered from the parties to whom they were transferred.

It is further ordered that the master ascertain and report what sum of money or other assets of the said loan association were unlawfully used by any officer or agent of either the loan association or trust com-

pany, and whether same or any part thereof can be recovered from said parties or their transferees.

It is further ordered that the demurrers to the petitions now on file seeking intervention be and the same are overruled, and that the petitioning parties mentioned in the petition of July 15, 1913, be allowed to intervene in this cause and present their claims to the master for adjudication in accordance with this decree.

It is further ordered that Sims Ely, the receiver in this cause, be appointed general receiver herein, with all proper powers, and that he hold all of the assets and property now in his hands belonging to either of said corporations until the further order of this court..

All other questions are reserved until the coming in of the report of the master.