ROTH *et al.* v. UNION NAT. BANK OF BARTLESVILLE *et al.*

No. 3830.    Opinion Filed October 10, 1916.

(160 Pac. 505.)

1.    **COURTS—Judgment—"Jurisdiction" — Elements.** The elements of jurisdiction are: (1) A court created by law, organized and sitting; (2) authority given such court by law to hear and determine causes of the kind in question; (3) power given such court by law to render a judgment such as it assumes to render; (4) authority over the parties to the case, acquired by their appearance or the service of process on them, if the judgment is to bind them personally and not merely as a judgment **in rem;**

(5) authority over the thing adjudicated upon by its being located within the court's territory, and by actually seizing it if liable to be carried away if the judgment is to be in rem; and (6) authority to decide the question involved, which, if the other essen-'ial elements of jurisdiction exist, is acquired by the question being submitted to it by the parties for decision.

(a) An order or decree of a court of general jurisdiction, or of such jurisdiction of the particular subject in question, with the power to make such order or decree under any possible state of facts in the case in which it was made, imports absolute verity and is not subject to collateral attack, except for fraud in its procurement, unless it affirmatively appears from the record of the action or proceeding in which the same was made that such court was without jurisdiction in respect to one or more of the above-stated elements essential in such case.

(b) Where the record in a case affirmatively discloses the facts to be such that such court is without power in such case to make the order or decree it assumes to make, the same is void, and therefore subject to collateral attack for want of jurisdiction to the extent, at least, that such court is without power to make the same.

2. **JUDGMENT—Requisites—Effect of Partial Invalidity.** If a judgment or decree includes a decision of an independent and separable subject-matter or question within, and an independent and separable subject-matter or question beyond, its jurisdiction, the same is valid as to the former and a mere nullity as to the latter, and is not void in toto.

3. **MORTGAGES—Validity—Effect of Partial Invalidity.** When the consideration of a mortgage is made up of two or more distinct transactions, including one or more that are illegal and one or more that are legal, and the legal part of the mortgage can be separated from the illegal part of the same, it may be upheld and foreclosed to the extent of such distinct legal part.

(a) Such illegal part does not necessarily invalidate the mortgage in toto when it does not enter into and taint the legal part of the same.

4. **GUARDIAN AND WARD—Indians—Indian Lands—Mortgage— Collateral Attack.** Under section 4, Act. Cong. May 27, 1908, c. 199, 35 Stat. 312, effective on and after July 27, 1908, for the removal of restrictions upon alienation from a part of the lands of the allottees of the Five Civilized Tribes of Indians, such lands are not subject to and cannot be held liable for any form of personal claim or demand against a Cherokee Indian minor allottee of one-eighth Indian blood arising or existing prior to July 27, 1908.

(a)   A county court can acquire no jurisdiction under Laws 1895, p. 37. as amended by Laws 1901, p. 38, as amended by Laws 1905, p. 185 (section 6364, Rev. Laws 1910), and under said act of Congress, to determine whether the allotted lands of such Cherokee Indian minor of one-eighth Indian blood should be mortgaged to pay an existing claim or demand to which neither such lands, nor any part thereof, is, by reason of the laws of this state or by reason of said act of Congress. then legally liable; and an order of such court. authorizing such mortgage, and the mortgage itself, to the extent of such claim or demand. are void and subject to collateral attack, without allegation or proof of fraud in their procurement.

5.    **SAME—Invalidity of Judgment.** Where a guardian's application for. authority to mortgage allotted lands of a Cherokee Indian minor, under Laws 1895, p. 37. as amended by Laws 1901. p. 38. as amended by Laws 1905, p. 185 (section 6364, Rev. Laws 1910), shows upon its face that the total indebtedness of his ward's estate is $1,312.98, of which a portion is not subject to be paid or secured by means of such mortgage, and, without alleging any necessity for mortgaging said real estate for more than the indebtedness subject to be paid or secured by means of such mortgage, prays for an order authorizing him to mortgage the same for $1,800, as a means to pay said indebetedness of $1,312.98, the county court acquires no jurisdiction to determine whether the same should be mortgaged for more than the amount of the indebtedness subject to be paid or secured by means of such mortgage under said statute, and under section 4 of the act of Congress of May 27, 1908, effective on and after July 27. 1908, relating to such lands, with interest thereon, and its order authorizing such mortgage for any excess of such amount, as well as the mortgage given in pursuance thereof, is, to the extent of such excess, void and subject to collateral attack without allegation or proof of fraud.

6.    **SAME—Validity of Order.**  An order. authorizing a guardian to mortgage his ward's estate to pay existing indebtedness, to which the same is liable, under Laws 1895. p. 37. as amended by Laws 1901, p. 38, as amended by Laws 1905, p. 185 (section 6364, Rev. Laws, 1910), made on the same day that application therefor was filed, and without notice, although irregular, is not void. and is therefore not subject to collateral attack without alleging and proving fraud in its procurement.

7.    **SAME—Correction of Orders—Nunc Pro Tunc.**  Where a guardian makes application under Laws 1895, p. 37. as amended by Laws 1901, p. 38, as amended by Laws 1905. p. 185 (section 6364). Rev. Laws 1910). for an order authorizing him to mortgage his ward's real estate to pay existing debts, to which the same is

liable, correctly describing such real estate in such application, and the court grants such application, but erroneously describes such estate as being situate in another township, where such ward owns no real estate, and such mortgage is executed by the guardian in pursuance of such order, but correctly describing such real estate, and where, upon application of an assignee of such mortgage more than two years thereafter, and after\such ward has attained her majority, such court enters a **nunc pro tunc** order, correcting such error, over the objections of such former ward, who, however, does not deny such error, such error will be regarded as merely clerical and subject to be so corrected.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Action by the Union National Bank of Bartlesville, Okla., against W. L. Norton, as guardian of the person and estate of Gretta E. Roth, *nee* Stokes, and others. Judgment for plaintiff, and defendants Gretta E. Roth, *nee* Stokes, and another bring error. Reversed and remanded.

*George & Campbell,* for plaintiffs in error.

*B. B. Foster,* for defendant in error Union Nat. Bank of Bartlesville.

THACKER, J. Gretta E. Roth, *nee* Stokes, one of the plaintiffs in error, will be designated as defendant, and the Union National Bank of Bartlesville, one of the defendants in error, will be designated as plaintiff, in accord with their positions in the trial court, while the other parties will be designated by their proper names so far as it may be necessary to refer to them.

This is an appeal from a judgment for the plaintiff against the defendant upon a note for $1,800, plus interest at the rate of 8 per cent. per annum from the date of the note, and foreclosing a guardian's mortgage to satisfy the same upon her following described "allotted" lands, exe-

cuted upon the authority and with the approval of the county court during her minority, to wit:

"The southwest quarter of the northwest quarter of section twenty-four (24), and the east half of the southeast quarter of the northeast quarter, and the northwest quarter of the southeast quarter of the northeast quarter of section twenty-three (23), and the northwest quarter of the southeast quarter of the northeast quarter of section eleven (11), all in township twenty-seven (27) north, range twelve (12) east Indian meridian, in Washington county, State of Oklahoma, and containing eighty acres, more or less."

This judgment was given upon the sustention of a demurrer to defendant's answer and her election to stand on that answer; and the only question in this case is as to whether the court erred in sustaining this demurrer.

However faulty may be an answer that purports to allege defensive matter, it is not error to overrule a demurrer to it if the petition fails to state facts sufficient to constitute a cause of action.  10 Mod. Am. L. 113; *Shimsher v. Newton*, 3 Ind. T. 555, 64 S. W. 534; *Hubbard v. Chism*, 5 Ind. T. 95, 82 S. W. 686; *Lafayette v. Hood*, 7 Ind. T. 608, 104 S. W. 853.

And it is contended by the defendant that the converse of this rule is true, and that the petition against her in the instant case is insufficient in that: (1) It does not affirmatively show that the county court found that the best interests of the estate of the defendant would be subserved by such mortgage, as is required by said Laws 1895, p. 38, as amended by Laws 1905, p. 185 (section 6364, Rev. Laws 1910) ; (2) it does not affirmatively show that the county court found all of the $1,800 nor more than $1,312.98, to secure which these lands were mortgaged, was owing, nor that the mortgage was necessary as a means to pay or as security for any existing debt, as required by said section

6364, Rev. Laws 1910; and (3) it does not affirmatively show that the county court found that there was any liability for which such estate, or any part thereof, was then legally liable to be ordered sold, as required by said section 6364, Rev. Laws 1910, and also by said act of Congress, the said orders made by the county court being silent in respect to all these matters, except that the order authorizing the mortgage recites "that it will be of advantage to said minor to mortgage her said estate to pay said indebtness." But this petition is clearly sufficient, as the authorities hereinafter quoted will show; and the only serious questions in this case relate to the sufficiency of the answer, the allegations in which the demurrer admits to be true.

It is contended by defendant that her said answer is sufficient to show a defense, in that it alleges and shows: (1) That all the indebtedness accrued prior to July 27, 1908, attaching a copy of the guardian's application for authority to execute the mortgage in question affirmatively showing this to be true as to a part of the indebtedness, and that these allotted lands could not be mortgaged to secure the same under section 4 of the Act of Congress of May 27, 1908, effective on and after July 27, 1908, declaring that such lands shall not be subjected or held liable to any form of personal claim or demand against the allottees arising or existing prior to the removal of restrictions, other than contracts expressly permitted by law; (2) that the county court authorized and the guardian executed the note and mortgage for $487.02 more than all of the indebtedness alleged in the application therefor; (3) that said note and mortgage were authorized by said county court without previously fixing a time for a hearing on the

58—20

guardian's application therefor, and without notice of hearing thereon; (4) and that the order authorizing and the order approving the note and mortgage each misdescribed these lands as being in range 13, where defendant owned no land, instead of in range 12, where these lands were situated, and afterwards 'this error was corrected by an order *nunc pro tunc,* made over defendant's objection thereto.

It is claimed by plaintiff, and appears to be tacitly admitted by defendant, that the orders authorizing and approving the mortgage and the mortgage itself are free from fraud.

The precise questions to be decided in this case, as will be seen from the foregoing, may be stated in the following form:

First. Did the county court of Washington county acquire jurisdiction to determine whether defendant's estate should be mortgaged to secure said indebtedness, especially that part of the indebtedness set forth in her guardian's application, which appears therefrom to have arisen and existed prior to July 27, 1908?

Second. Did the county court acquire jurisdiction to determine whether the defendant's estate should be mortgaged for any amount in excess of the alleged indebtedness of $1,312.98, less such portion of the same for which it could not be mortgaged because it accrued prior to July 27, 1908, with interest thereon from date of mortgage?

Third. Does the fact that the order authorizing the execution of the mortgage was made without a prior order fixing a time for a hearing upon the guardian's application, and without notice of such hearing, affect, in this collateral proceeding, the validity of the mortgage?

Fourth. Did the county court have jurisdiction to make the *nunc pro tunc* order correcting the error in the description of the lands in question in the orders authorizing and approving the mortgage so as to conform the same to the guardian's application therefor and to the mortgage itself, and, if not, does this error in description defeat plaintiff's right to foreclose?

Fifth. Was it necessary that plaintiff's petition should have alleged and shown affirmatively that the county court found that the best interest of the estate would be subserved by such mortgage, that the county court found that the $1,800 for which the mortgage was given was, in fact, owing, and that such estate was legally liable to be ordered sold to satisfy such indebtedness to entitle it to foreclose this mortgage?

Laws of 1895, p. 37, as amended by Laws 1901, p. 38, as amended by Laws 1905, p. 185 (section 6364, Rev. Laws 1910), which is the statutory authority for such proceeding to mortgage the real estate of a ward, reads:

"The county judge may, upon petition supported by competent testimony showing that the best interests of the estate demand it, grant authority by order to administrators of intestates' estates and to guardians of the estates of minors or insane persons to mortgage any real estate belonging to such estate: Provided, that in no instance shall authority be granted by such judge to any such administrator or guardian to mortgage such real estate for a greater sum than is necessary to pay the then existing debts and liabilities for which such estate, or any part thereof, is then legally liable to be ordered sold."

There is no question, of course, but that the proceedings had in the county court appear from the answer to have been irregular; but, in view of section 1546, Stat. 1890 (section 6489, Rev. Laws 1910); section 1248, Stat.

1890 (section 6190, Rev. Laws 1910) ; *Hathaway v. Hoffman,* 53 Okla. 72, 153 Pac. 184; *Baker v. Cureton,* 49 Okla. 15, 150 Pac. 1090; *Greer v. McNeal,* 11 Okla. 519, 69 Pac. 893; *Holmes v. Holmes,* 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920; *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433; *Spade v. Morton,* 28 Okla. 384, 114 Pac. 724; *Sockey v. Winstock,* 43 Okla. 758, 144 Pac. 372; and *Cowan v. Hubbard,* 50 Okla. 671, 151 Pac. 678—the aforesaid orders of the county court must be taken, in this collateral proceeding, as conclusive answers against the defendant to each and all of her contentions, unless these orders are affirmatively impeached by the application of the guardian invoking the jurisdiction of that court to hear and determine the question as to whether the mortgage should be authorized. And these orders are not so impeached except in the respect hereinafter shown. Section 1546, Stat. 1890 (section 6489, Rev. Laws 1910) reads:

"Orders and decrees made by the county court, or the judge thereof, need not recite the existence of facts, or the performance of acts upon which the jurisdiction of the court or judge may depend, but it shall only be necessary that they contain the matters ordered or adjudged, except as otherwise provided in this chapter."

This statute seems to be in perfect accord with and merely declaratory of the general law in respect to the orders and decrees of courts of general jurisdiction or of general jurisdiction in a particular matter; and the county courts of this state are courts of general jurisdiction in probate matters.

It may be here observed, as held in *Jefferson v. Gallagher,* 56 Okla. 405, 150 Pac. 1071, that a judgment or decree is void, and therefore subject to collateral attack: (1) Whenever the court is without jurisdiction of the parties, if the judgment is to bind them personally instead

of merely as a judgment *in rem;* (2) whenever the court is without jurisdiction of the subject-matter in general, and (3) whenever the court is without jurisdiction of any particular matter decided. In the case of *Clark v. Arizona Mut. Savings & Loan Ass'n et al.* (D. C.) 217 Fed. 640, affirmed in *Farmers' & Merchants' Bank of Phoenix, Ariz., v. Arizona Mut. Savings & Loan Ass'n,* 220 Fed. 1, 135 C. C. A. 577, where a number of the decisions of the Supreme Court of the United States touching this question are cited and quoted, it is held in the second paragraph of the syllabus:

"Although a court· has jurisdiction of the subject-matter of an action or of the parties, its power to render a valid judgment is, nevertheless, limited by the nature of the suit and the issues made by the pleadings, and if it transcends such limits, its judgment is without jurisdiction and void."

In 24 Cyc. 684, it is said:

"In addition to jurisdiction of the parties and the subject-matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment presumes to decide, or of the particular remedy or relief which it assumes to grant, and should not undertake to pass upon matters outside the issue."

Also, see 1 Bailey on Jurisdiction, sec. 24, p. 21.

And in Mod. Am. L. 501, it is said:

"Jurisdiction is the authority to hear and determine; and in order that it may exist the following are essential: (1) A court created by law, organized and sitting; (2) authority given it by that law to hear and determine causes of the kind in question; (3) power given it by law to render a judgment such as it assumes to render; (4) authority over the parties to the case if the judgment is to bind them personally as a judgment *in personam* (against the person) which is acquired over the plaintiff

by his appearance and submission of the matter to the court, and is acquired over the defendant by his voluntary appearance, or by service of process on him; (5) authority over the thing adjudicated upon by its being located within the court's territory, and by actually seizing it if liable to be carried away; (6) authority to decide the question involved, which is acquired by the question being submitted to it by the parties for decision."

It appears that the subject-matter of the proceeding in which the county court authorized the mortgage now sued on, considered in one of its aspects, was the entire thing in controversy, that is, was, in this comprehensive aspect, the question as to whether the best interests of the defendant's estate demanded that her guardian should mortgage her allotted lands for a sum necessary to pay, not only the then existing debts and liabilities for which her estate was then legally liable to be ordered sold, but to pay certain debts and liabilities which accrued prior to July 27, 1908, for which such lands were not then legally liable to be ordered sold, and, also, for $487.02 in excess of all the then existing debts and liabilities of such estate. Black's Law Dictionary; 37 Cyc. 342-3.

The question as to whether her guardian should mortgage such lands for a sum necessary to pay the debts and liabilities which accrued prior to July 27, 1908, and the question as to whether he should mortgage the same for any amount in excess of the debts and liabilities for which her estate was then legally liable to be sold are each independent questions, and might each have been considered and determined by the county court apart from the other, and apart from the question of mortgaging on account of the balance of the indebtedness, instead of as an inseparable part of the general and all comprehensive questions above stated; and it thus appears that each of these ques-

tions may and should here be treated as distinct. And it may as well be here stated, in respect to whether a judgment in excess of jurisdiction is wholly void or merely void as to the excess, that the true rule appears to be that laid down by 1 Bailey on Jurisdiction, as follows:

"A court must proceed and determine within the limits of the power conferred. If it renders a judgment in an action or proceeding, where jurisdiction has attached, that it was not authorized or empowered to render at all, such judgment or decree is in excess of its jurisdiction, and for that reason a nullity. *So, if it render a judgment or decree which is within its authority as to part only, but includes also that which is not within its power, the excess will be a nullity, and if the valid and invalid parts are independent of each other, the whole will not be void, but only such part as is in excess of the powers of the court.*" (The italicization is ours.)

As to the mortgage itself, the same principle applies, as will be seen from the following excerpts from 1 Jones on Mortgages (7th Ed.) sec. 620, p. 107, and 1 Pingrey on Mortgages, sec. 547, p. 577. The former reads:

"The mortgage must be upheld for such part of the consideration as was free from taint of illegality, when the consideration of a mortgage is made up of several distinct transactions, some of which are legal and others are not, and the one can be separated, with certainty, from the other. Thus a mortgage undertaking to secure two or more notes has been upheld as security for a legal note, though invalid as to an illegal note."

The latter reads:

"If the consideration of a mortgage is made up of several distinct transactions, some of which are illegal, and that part of the consideration which is illegal can be separated with ease and certainty from the legal, the mortgage may be held valid for that part of the consideration free

from illegality. * * * If the illegality taints the whole transaction, the mortgage is invalid *in toto.*"

Also, see 1 Wiltse on Mortgage Foreclosure, sec. 407, p. 574.

In 12 R. C. L. 1140, it is said:

"It is held in some cases that such facts as would, if true, give the court power to order the sale must appear in the application or somewhere on the record, but it is also held that where the probate court is a court of general jurisdiction, whose duty it is to pass upon the sufficiency of the facts alleged, and whose judgment is supported by a presumption of validity, its order of sale cannot be attacked collaterally unless the defect of jurisdiction *affirmatively* appears upon the record." (The italicization is ours.)

The syllabus to *Hathaway v. Hoffman, supra,* reads:

"Where, in an action of ejectment joined with one to clear title, plaintiffs, in order to prove title in themselves, assail the validity of the record of the county court appointing for them a guardian, who, as such, pursuant to an order of the court, had subsequently sold and conveyed the land in controversy to defendant's grantee, held that such was a collateral attack, and that the record, being one of a court of general jurisdiction as to probate matters, could not be impeached by evidence *aliunde.*

"Where, assailing the record of a county court, plaintiff introduced parol evidence *aliunde,* over objection, that the minors for whom a guardian had been appointed by the court resided at the time of the appointment in a county other than the county in which the appointment was made, held, that the court did right in directing a verdict for the defendant, to lay that evidence out of the case and in effect, hold that such was incompetent and without probative force to impeach the validity of the record.

"The appointment of a guardian for minors by a county court imports jurisdiction in the court so to do,

and it will be inferred from the fact that such an appointment was made that all the facts necessary to vest the court with jurisdiction to make the appointment had been found to exist before the same was made.

"Where the records of the county court disclose that letters of guardianship were issued and duly recorded, that the guardian gave bond, duly qualified, and entered upon the discharge of his duties as such, as required by law, the guardian's acts will be held valid, when collaterally attacked, although the record may fail to disclose any other evidence of his appointment."

In the body of the opinion in that case it is clearly shown that in a collateral proceeding, such as the instant case is, the record of a county court, being a court of general jurisdiction in probate matters, cannot be impeached by evidence *aliunde*. And that case is in harmony with *Eaves v. Mullen, supra; Spade v. Morton, supra*, and *Sockey v. Winstock, supra*. The case of *Lessee of Grignon v. Astor*, 2 How. 319, 11 L. Ed. 283, cited in both *Hathaway v. Hoffman, supra*, and *Eaves v. Mullen, supra*, is approvingly quoted as follows in the latter case:

"The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken. The rule is the same whether the law gives an appeal or not. If none is given from the final decree, it is conclusive on all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence. The court having power to make the decree, it can be impeached only by fraud in the party who obtains it. *United States v. De la Maza Arredondo*, 6 Pet. 729, 8 L. Ed. 547. A purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the

title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error, so where an appeal is given but not taken in the time prescribed by law. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects. They are not courts of special or limited jurisdiction. They are not inferior courts in the technical sense of the term, because an appeal lies from their decisions."

And it is further said in the opinion in the Grignon Case:

"Jurisdiction has been thus defined by this court: *'The power to hear and determine a cause is jurisdiction. It is coram judice whenever a case is presented which brings this power into action. If the petitioner presents such a case in his petition that on a demurrer the court would render a judgment in his favor, it is an undoubted case of jurisdiction.* Whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case is the exercise of jurisdiction, conferred by the filing a petition containing all the requisites, and in the manner required by law.' [*United States v. De la Maza Arredondo*] 6 Pet. 709 [8 L. Ed. 547.] 'Any movement by a court is necessarily the exercise of jurisdiction, so, to exercise any judicial power over the subject-matter and the parties, the question is whether, on the case before a court, their action is judicial or extrajudicial, with or without the authority of law, to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction; what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action by hearing and determining it.' [*Rhode Island v. Massachusetts*] 12 Pet. 718 [9 L. Ed. 1233; *In re Watkins*] 3 Pet. 205 [7 L. Ed. 650]. It is a case of judicial cognizance, and the proceedings are judicial [*Kendall v. United States*] 12 Pet. 623 [9 L. Ed. 1181].

*"No other requisites to the jurisdiction of the county court are prescribed than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the county court where he dwelt or his real estate was situate, making these facts appear to the court. Their decision was the exercise of jurisdiction, which was conferred by the representations; for whenever that was before the court, they must hear and determine whether it was true or not; it was a subject on which there might be judicial action. The record of the county court shows that there was a petition representing some facts by the administrator, who prayed an order of sale; that the court took those facts which were alleged in the petition into consideration, and for these and divers other good reasons ordered that he be empowered to sell. It did then appear to the court that there were facts and reasons before them which brought their power into action, and that it was exercised by granting the prayer of the petitioner,* and the decree of the court does not specify the facts and reasons, or refer to the evidence on which they were made to appear to the judicial eye; they must have been, and the law presumes that they were such as to justify their action. [*Philadelphia & T. Ry. Co. v. Stimpson*] 14 Pet. 458, 10 L. Ed. 535. But though the order of the court sets forth no facts on which it was founded, the license to the administrator is full and explicit, showing what was considered and adjudicated on the petition and evidence. and that every requisition of the law had been complied with before the order was made, by proof of the existence of all the facts on which the power to make it depended. \* \* \*

*"Nor is it necessary that a full or perfect account should appear in the records of the contents of papers on file, or the judgment of the court on matters preliminary to a final order; it is enough that there be something of record which shows the subject-matter before the court, and their action upon it; that their judicial power arose and was exercised by a definitive order, sentence, or decree. Thompson v. Tolmie,* 2 Pet. 165, 7 L. Ed. 381. *The peti-*

*tion in the present case called for a decision of the court that the facts represented did or did not appear to them to be sufficiently proved;* they decided that they did so appear, whereby their power was exercised by the authority of the law, and it became their duty to order the sale unless in a case under the third section. * * *

"After the court has passed on the representation of the administrator, the law presumes that it was accompanied by the certificate of the judge of probate, as that was a requisite to the action of the court. Their order of sale is evidence of that or any fact which was necessary to give them power to make it, and the same remark applies to the order to give notice to the parties. This is a familiar principle in ordinary adversary actions, in which it is presumed, after verdict, that the plaintiff has proved every fact which is indispensable to his recovery, though no evidence appears on the record to show it; and the principle is of more universal application in proceedings *in rem* after a final decree by a court of competent jurisdiction over the subject-matter. * * *

" 'If the purchaser (under a decree of the orphans' court) was responsible for their mistakes in point of fact, after they had adjudicated upon the facts, and acted upon them, those sales would be snares for honest men.' [*Thompson v. Tolmie*] 2 Pet. 169 [7 L. Ed. 381], cited [*Mc Preson v. Cunliff*] 11 [Serg.] & R. [Pa.] 492 [14 Am. Dec. 642].

" 'The purchaser is not bound to look farther back than the order of the court. He is not to see whether the court were mistaken in the facts of debts and children. The decree of an orphans' court in a case within its jurisdiction is reversible only on appeal, and not collaterally in another suit. A title under a license to the administrator to sell real estate, "is good against the heirs of the intestate, although the license was granted upon the certificate of the judge of probate, not warranted by the circumstance of the case." ' " (The italicization is ours.)

In that case, which was collateral to the one in the county court in which the decree there under consideration was made, the Supreme Court of the United States shows that the jurisdiction of the county court had, in fact, been duly invoked by certain representations to it that are set out in the opinion; and, notwithstanding the general statement that "a purchaser is not bound to look beyond the decree," what is there said with reference to the invocation of jurisdiction in the county court leaves little room for doubt, when the opinion is considered as a whole, that the court deemed it important to the decision that such jurisdiction was, in fact, invoked as a predicate for the decree; the conclusion that the court thought that the record must either affirmatively show that the jurisdiction of the court was invoked, or, if not, must not negative such invocation, seems irresistible from the fact that the court itself did look with the utmost care beyond the decree and show with detail of statement that jurisdiction had been invoked and, in this connection, also made the statements above italicized. For instance, it is there said:

"The power to *hear and determine* a cause is jurisdiction; it is *coram judice* whenever a *case is presented* which brings this power into action.   *   *   *"

Is it jurisdiction or will jurisdiction be conclusively presumed in a collateral proceeding where it affirmatively appears that there is no power to "determine"? It is there further said:

"No other requisites to the jurisdiction of the county court are prescribed than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the county court.   *   *   *
Their decision was the exercise of jurisdiction, which was *conferred* by the representation.   *   *   *   The record of the county court shows that there was a *petition represent-*

*ing some facts.* \* \* \* It did then appear that *there were. facts and reasons before them which brought their power into action,* and that it was exercised. \* \* \*"

Can it be thought that the Supreme Court of the United States in that case would have upheld the decree of the county court against collateral attack if it had *affirmatively* appeared from the record proper that the jurisdiction of the latter court had not been invoked? And is there any material difference in failing to invoke the jurisdiction of a court and futilely attempting to invoke it in respect to a matter explicitly declared by an unquestioned statute beyond its power of jurisdiction. In *U. S., to Use of Hine et al., v. Morse et al.,* 218 U. S. 493, 31 Sup. Ct. 37, 54 L. Ed. 1123, 21 Ann. Cas. 728, also cited in *Hathaway v. Hoffman, supra,* it is said:

"But if we assume that, upon a critical construction of the will and of the statute, the bill seeking a sale of this property for reinvestment did not state a case clearly within the statutory authority of the court, it does not necessarily follow that the decree of sale and all else that occurred are to be treated as mere nullities, subject to collateral attacks, such as this is. \* \* \* The Supreme Court of the district had jurisdiction over the subject-matter, the *res.* It had jurisdiction over the parties. It was, according to due course of equity proceeding, called upon to examine the will and the statute which gave the power to make the sale in certain circumstances. If, then, jurisdiction consists in the power to hear and determine, as has so many times been said, and the court errs in holding that a case has been made either under its inherent power or its statutory authority, can it be said that it has usurped jurisdiction, and that its decrees are absolute nullities? To this we cannot consent. If the court was one of general, and not special, jurisdiction, if, under its inherent power, supplemented by statutory enlargement, it had jurisdiction under any circumstances to sell the real estate of minors for reinvestment, it had jurisdiction to ex-

amine and determine whether the particular application was within or beyond its authority. To do this was jurisdiction. If it errs, its judgment is reversible by proper appellate procedure. But its judgment, until it be corrected, is a judgment, and cannot be regarded as a nullity. * * * It is an axiomatic proposition that when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceeding, being *coram judice,* can be impeached collaterally only for fraud. * * * In *Voorhees v. Jackson,* 10 Pet. 449, 9 L. Ed. 490, this court said: 'The line which separates error in judgment from the usurpation of power is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste paper. There can be no middle character assigned to judicial proceedings which are irreversible for error. Such is their effect between the parties to the suit, and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution. It would be a well-merited reproach to our jurisprudence if an innocent purchaser, no party to the suit, who had paid his money on the faith of an order of a court, should not have the same protection under an erroneous proceeding as the party who derived the benefit accruing from it. "

In this case the Supreme Court of the United States said, in effect, that a decree will not *necessarily* be treated as a mere nullity, subject to collateral attack, when the bill invoking jurisdiction does not *clearly* state a case within the statutory authority of the court and "the court errs in holding that a case has been made either under its inherent power or its statutory authority."

And then the court says:

"If the court was one of general, and not special, jurisdiction, if under its inherent power, supplemented by statutory enlargement, it had jurisdiction under any circumstances to sell the real estate of minors for reinvestment, it had jurisdiction to examine and determine whether the particular application was within or beyond its authority."

If in that case it had been *clear* that the court could not have had jurisdiction under any circumstances to sell the real estate of minors for reinvestment, would the Supreme Court of the United States not have held the decree a mere nullity? And, referring to this supposed state of the case, is there any material difference between it and a case in which, in view of the undisputed facts disclosed by the record proper in the case, it is clear that the court could not have had jurisdiction under any circumstances to sell or mortgage, although it might have had such jurisdiction under some circumstances, but for the existence of the undisputed facts so appearing? The court in that case seems to attach some importance to the fact that it was not *clear* but open to question as to whether the particular application was within or beyond the authority of the court to which it was addressed; and there is room to believe, if the bill had invoked the jurisdiction of the court in violation of a plain provision of unquestionable statutory law as to the authority of the court, a different conclusion might have been reached, although there may possibly be some room for a measure of doubt as to this.

The statement in the Grignon Case, repeated in *United States, to Use of Hine, v. Morse, supra,* and quoted without express disapproval by our own court in *Eaves v. Mullen, supra,* to the effect that a purchaser of land under an order of sale by a probate court of general jurisdiction

in such matters need not look beyond such order to be assured of its validity and invulnerability against collateral attack, except for fraud in its procurement, cannot be taken as true, except upon the assumption that the record does not affirmatively show that the jurisdiction of the court had not been sufficiently invoked, in view of other expressions hereinbefore quoted from the same court in the same cases; but it appears from those cases, as well as from cases decided by our own court, that if the probate court has acquired jurisdiction, or if the record does not affirmatively show that it has not acquired the same, over the subject-matter in the case and has the power under the law to make such order, one need not look beyond the order to be so assured. In *Cowan v. Hubbard, supra,* the syllabus reads:

"A guardian's deed will not be held void on a collateral attack merely because the petition of the guardian to sell the real estate of his ward defectively states the existence of the conditions under which the statute authorizes the sale."

In *Eaves v. Mullen, supra,* the fifth paragraph of the syllabus reads:

"A petition of a guardian for an order of sale of his ward's real estate must be filed in the county court of the county in which he was appointed guardian; but the petition is not required to show affirmatively that the ward resides in the county where it is filed, in order to give the court jurisdiction."

In *Sockey v. Winstock, supra,* the first paragraph of the syllabus reads as follows:

"'Under section 6557, Rev. Laws 1910, the petition of a guardian to sell the real estate belonging to his ward must state the condition of the estate, and facts tending to show the expediency or necessity of such sale, in order to give the court jurisdiction to order the sale."

This case is one of collateral attack upon a guardian's conveyance; and it shows that a decree is void, and therefore subject to collateral attack, whenever it *affirmatively* appears from the record proper that the court was without jurisdiction.

It is clear that the county court could acquire no jurisdiction to determine whether defendant's allotted lands should be mortgaged to secure an indebtedness for which it was not subject to be mortgaged by reason of section 4 of the Act of Congress of May 27, 1908, effective on and after July 27, 1908; and the orders, authorizing and approving the mortgage to secure that portion of the indebtedness which affirmatively appears from the guardian's application therefor to have arisen and existed prior to that date, being within the inhibition of that act, are beyond the power of the court, and therefore void, and subject to collateral attack to the extent of that part of the indebtedness. *Hill v. Hill*, 49 Okla. 424, 152 Pac. 1122; *Bell v. Fitzpatrick*, 53 Okla. 574, 157 Pac. 334.

As to whether the county court acquired jurisdiction to determine whether the best interests of the defendant's estate would be subserved by the mortgage in respect to the $487.02 by which it exceeds the amount of all the indebtedness and in respect to any excess of the actual indebtedness that arose and did not exist until after July 27, 1908, and whether it was necessary to mortgage the same for said excess, with interest thereon from the date of the mortgage, as is apparent from his application, that presents a more serious question; but, in the absence of any allegation to the contrary, we think the presumption from the guardian's application is that no necessity existed, and consequently no advantage to the estate could accrue which would justify the mortgage for any amount

in excess of the amount of the indebtedness in respect to which a mortgage was permissible, especially in view of our usury laws, and that the county court, having no power to render such a judgment, acquired no jurisdiction to authorize or approve the mortgage for more than the amount of indebtedness, plus such interest thereon. *Hill v. Hill,* 49 Okla. 424, 152 Pac. 1122.

As to whether the fact that the county court heard and acted upon the guardian's application without notice, and on the same day that it was filed, renders the order authorizing the mortgage void, and therefore subject to collateral attack without proof of the requisite species of fraud (7 Mod. Am. L. 462-3), that must be answered in the negative upon the authority of all the cases hereinbefore cited touching this question, especially *Eaves v. Mullen.* See *Baker v. Cureton, supra.*

As to the *nunc pro tunc* order, correcting the mere clerical error in the description of the land in the orders authorizing and approving the mortgage, to make that description conform to the description in the guardian's application and the description in the mortgage itself, we think there is no doubt but that the court had authority and properly corrected this error. *Metz v. Wright,* 116 Mo. App. 631, 92 S. W. 1125.

As to the sufficiency of the plaintiff's petition, it was not necessary to have alleged any of the evidence adduced or findings of fact made by the county court in support of the guardian's application for authority to execute this mortgage, as the sufficiency of the evidence to authorize the orders made by the court, so far as its jurisdiction had been invoked, is conclusively presumed, in the absence of fraud in procurement, when the question arises collaterally as here; and the omission of the petition to allege

that the county court found that the best interests of defendant's estate would be subserved by the mortgage, that a certain amount of indebtedness existed for which a mortgage might properly be executed under the statute, and that the defendant's estate was liable to be sold to satisfy that indebtedness, does not render the petition insufficient and subject to demurrer.

The petition being sufficient, as we have already stated, and it appearing from the answer that the record proper in the proceedings had in the county court shows affirmatively that a severable portion of the indebtedness, as a means for the payment of which the mortgage was authorized, accrued prior to July 27, 1908, when the act of Congress of May 27, 1908, went into effect, this portion of the subject-matter of the proceedings in the county court was beyond its jurisdiction, and, being therefore void and subject to collateral attack in this respect, the amount of the same should be computed and deducted from the demand of the plaintiff; and, as it appears from the answer that the total indebtedness of this defendant's estate at the time of the authorization of this mortgage was only $1,312.98, and that the order of the county court authorizing the mortgage and the mortgage itself were for $487.02 in excess of such indebtedness, and to that extent beyond the jurisdiction of the county court, this amount should also be deducted, as the plaintiff is not entitled to foreclose this mortgage for more than the amount of the existing indebtedness that accrued subsequent to July 27, 1908.

For the reasons stated, the judgment is reversed, and the cause remanded, for further proceedings in accord with the views herein expressed.

KANE, C. J., and HARDY, J., concur; TURNER and SHARP, JJ., concur in the conclusion reached.