CASE 13—PETITION EQUITY—SEPTEMBER 17.

# White, &c., v. O'Bannon, &c.

### APPEAL FROM HENRY CIRCUIT COURT.

1. IN INDORSING A LEVY ON LAND UPON AN ATTACHMENT, the generality of the description makes no difference, provided it is sufficiently intelligible to fix the lien of the attachment. The same precision is not required that is required in a sheriff's return upon an execution.

   In this case the land upon which the attachment was levied was described as "one hundred and forty acres of land near Eminence, Henry county, the property of defendants." *Held*—Sufficient.

2. A VERBAL SALE OF LAND invests the purchaser with no legal or equitable title whatever, and a verbal division stands upon precisely the same footing.

   *A verbal division of land* owned by A and B jointly was agreed upon. Thereafter A, by title bond, sold to C that part of the land allotted to him in the division. Subsequently an attachment was levied upon the entire tract of land as the property of A and B, and at the sale D became the purchaser of that part of it which had been allotted to A in the verbal division. Thereafter B, by writing, conveyed to A his undivided interest in that part of the land which C, who had purchased it from A, seeks, by this action, to recover of D. *Held*—That the verbal division conferred upon A no title to this land, and, therefore, his sale to C conferred upon C no title; and the levy of the attachment having created a lien upon the land, that lien was not overreached by the subsequent conveyance from B to A, although that conveyance was made pursuant to the previous verbal division.

GEO. C. DRANE FOR APPELLANTS.

1. Sale of land under execution or attachment is void where the officer' return does not identify the land sufficiently to enable a conveyance to be made from the description. (Johnson v. Rowe, MS. Op, Sept. 1880.)

2. Attached property can not be sold by sheriff as such—only by commissioner of court or special commissioner. (Gen. Stats., chap. 75, secs. 2, 11.)

WM. LINDSAY, JOS. BARBOUR AND WM. P. THORN FOR APPELLEES.

1. General description of land on levy of attachment is all that is required. (Reid v. Heasley, 9 Dana, 325; Bell v. Witherford, 12 Bush, 506; Demint v. Thompson, 80 Ky., 255.)

2. Court having jurisdiction of person may attach and sell land in another county. (Nixon v. Jack, 16 B. M., 180.)

3. A town marshal is a constable within the meaning of section 667, Civil Code, and may levy an attachment. (Wood v. Wells, 2 Bush, 200.)

4. Judgment of court of general jurisdiction can not be collaterally attacked. (Newcomb v. Newcomb, 13 Bush, 563; Dorsey v. Kendall, 8 Bush, 299; 7 Dana, 480; 9 Dana, 274; 8 B. M., 102.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

In September, 1870, A. G. Roberts instituted two actions of debt in the Shelby circuit court against John W. and James H. White. Roberts sought in each action to recover judgment against John W. and James H. White on their joint indebtedness to him.

About the same time W. C. Baskett brought suit in the Shelby circuit court against John W. and James H. White, for the purpose of recovering judgment against them on their joint indebtedness to him.

John W. and James H. White were personally served with summons to answer each of the foregoing actions; also orders of attachment against the property of both of the Whites were issued in each of the foregoing actions, and were directed to the sheriffs of Shelby and Henry counties. Those sent to Henry county were levied by the sheriff of that county on the ninth and twelfth of September, 1870, on a tract of land containing one hundred and forty acres, as the property of both the Whites.

At the March term, 1871, judgment was rendered against both the Whites by default in each of the foregoing actions, and the attachment in each action was sustained, and the one hundred and forty acres of land attached by the sheriff of Henry county was ordered to be sold. The sheriff of Henry county was

directed to make the sale. The sheriff, pursuant to said order, sold the land on the first Monday in January, 1872, and G. W. Bondurant became the purchaser of sixty-two and one-half acres at the price of one thousand three hundred and fifty-four dollars and seventy-four cents. At the October term, 1872, the commissioner of the Shelby circuit court, by the order of that court, conveyed the sixty-two and one half acres to G. W. Bondurant.

At the March term, 1871, of the Shelby circuit court, Shelby Scearce obtained personal judgment against John W. and James H. White, and execution was issued thereon and directed to the sheriff of Henry county, which was levied April 3, 1871, upon the same tract of land, but subject to said attachments. And on the first Monday in January, 1872, the sheriff sold seven and one-half acres of the tract, which satisfied the execution. G. W. Bondurant became the purchaser of this land. The two parcels thus bought by him on the same day amounted to seventy acres.

Two or three years after Bondurant purchased the land, he conveyed it by deed duly acknowledged and recorded to Smith Guthrie, and he, in the year 1881, sold it by executory contract to the appellee, James O'Bannon.

On the twenty-third day of May, 1871, John W. White signed and acknowledged a deed to the one hundred and forty acres of land to Judge B. J. Peters, in trust for the appellant, Juliet White, wife of John W. White, which deed was recorded in the Henry county court on the third of June, 1871.

In 1883 the appellees, James O'Bannon and Smith

Guthrie, brought suit in the Henry circuit court against the appellants, Juliet White and her trustee, Judge B. J. Peters, for the purpose of removing the cloud from the title of seventy acres of land, which rested thereon by reason of the conveyance by John W. White to said Peters, in trust for Juliet White, and of quieting their title to the same.

The appellants resisted the appellees' right to the relief sought, mainly upon two grounds: First, that the levy upon the land was void for want of a sufficient description of it. Second, that Judge B. J. Peters, before and at the time of the issuing of the orders of attachment and the levy, or pretended levy of the same, was the owner of said tract of land in trust for the appellant Juliet White. These grounds will be noticed in their order.

The sheriff's return on one of the orders of attachment reads as follows: "Come to hand September 11, 1870, at 10 o'clock, A. M., and on the twelfth day of September, 1870, at 12 o'clock, I levied this attachment on about one hundred and forty acres of land near Eminence, Henry county, the property of defendants. The defendants not being found, and no person being found on the land, I posted a true copy of the within attachment on the door of the house on the land.                    A. H. DITTO, S. H. C."

The indorsement of the levy on each of the other orders of attachment is in the same language as the foregoing, differing only in the dates of the respective levies.

Are these indorsements sufficiently descriptive of the land levied on? We think they are.

The appellants' counsel contends for the same particularity of description in the indorsement of a levy upon land on an order of attachment as is required in the indorsement on an execution of its levy upon land. Without deciding whether the indorsement upon these orders of attachment would be a sufficient indorsement on an execution of its levy upon land, it is sufficient to say, that in making the indorsement of the levy, a distinction is taken between the levy of an attachment and the levy of an execution. The levy of an attachment upon land is merely for the purpose of creating a lien on it, for the purpose of giving the court issuing the order jurisdiction of the property, that it may be thereafter by the court's order applied to the payment of the plaintiff's judgment, if he obtain one. And the court, thus having control of the property, may, in its order of sale, enlarge the description as given by the sheriff's return, so as to accurately identify the land. In other words, after the sheriff has made his return of the levy, the property is then under judicial control ; and the sale of it, by the order of court, is a judicial sale. And the court, while it can not enlarge the quantity of property levied on, or substitute other property in its place, may disregard the descriptive language of the return, and engraft in its order of sale an accurate description of the property ; so that all persons may understand what property is to be sold, and for what property they are bidding.

The court's deed recites these steps as connecting links of the purchaser's title, upon which he has the right to rely as furnishing him all of the title that the

defendant had to the property attached. For these reasons, any words which designate and comprehend the property levied on, are sufficient.

The generality of the description makes no difference, provided it is sufficiently intelligible to fix the lien of the attachment.

The sheriff, in his levy upon real property and sale of it under execution, acts in a ministerial capacity, and by the levy, "when carried to a sale," the defendant is divested of his title to the property, and the purchaser is invested with the title. The sheriff's advertisement usually recites the descriptive terms of the return upon the execution; and these terms are usually inserted in the deed. Indeed, they should be so inserted, in order that the deed itself may show a consecutive chain of title from the defendant in the execution to the purchaser. Therefore, greater precision should be required in the sheriff's return on an execution than on the order of attachment. (See Drake on Attachments, section 237; Waples on Attachment and Garnishment, page 172; Freeman on Executions, section 281.)

The sheriff's indorsement upon each order of attachment shows, first, that they were, on the first day of September, 1870, levied on a tract of land containing one hundred and forty acres, which was situated near the town of Eminence, in Henry county, Kentucky.

2d. That this land was levied on as the property of the defendants.

3d. That, as they were not found, copies of the orders of attachment were posted on the front door of the house on the land.

According to the principles just announced, we think that the indorsement upon each of the attachments was sufficiently intelligible to fix the lien of the attachments upon said land.

The appellants made their answer a counter-claim against the appellees by which they sought to recover the land in controversy, upon the ground that they, at the time of the issual and levy of the attachments, were the owners of the land by purchase from John W. White. They contend that some time in 1869 the appellant B. J. Peters, as trustee of the appellant Mrs. White, purchased by title bond the one hundred and forty-acre tract of land from John W. White, the husband of Mrs. White, and that on the twenty-third day of May, 1871, John W. White signed and acknowledged a conveyance to B. J. Peters as trustee to said land, which was recorded on the third of June, 1871. That at the time John W. White executed the title bond to B. J. Peters, he was the owner of the entire tract of land.

It is needless to discuss what the legal or equitable rights of the appellant would be, if these alleged facts were all true. That they are not true in at least one important particular, is proven by the record, which shows that John W. White, at the time the attachments were levied on the one hundred and forty acres of land, only owned an undivided half of it, and James H. White owned the other. It is true that the proof shows that before the levy of the attachments John W. and James H. White had verbally agreed on a division of the lands which they jointly owned, and that the tract of land in controversy was to belong to John W. White;

but it is also true that James H. White did not convey by any writing his undivided half interest in this tract of land to John W. White until the first day of February 1871, which was long after the attachments were levied.  And the attachments were levied upon the land as the property of both John W. and James H. White, to secure debts for which they were jointly bound.

It is well-settled that a verbal sale of land invests the purchaser with no legal or equitable title whatever, and a verbal division stands upon precisely the same footing.

And, as John W. White acquired no legal or equitable title to James H. White's undivided interest in the land by the verbal division, it follows that the appellants, by their purchase by title bond, acquired no legal or equitable title to said interest.  And the attachments having been levied on the land before James H. White had conveyed his interest therein to John W. White, by any writing, a lien was thereby created on said interest, which lien the subsequent written conveyance by James H. White to John W. White, although made pursuant to the prior verbal agreement of division which antedated the levy of the attachments, could not overreach.

Therefore, as Bondurant purchased only seventy acres of the tract of land at the attachment sale, which was not quite half of it, and which was subject to the attachments, the lower court did right in rendering judgment for the appellees.

The judgment of the lower court is affirmed.