## JAMES BROWN VS. ABRAHAM PARKER.

1. Section 17, of the act of congress, approved March 3, 1891, 26 Stat. Large, 1026, modifies § 2387, R. S. U. S.; repudiates the act of Oklahoma legislature, approved December 2, 1890, Ok. Stat. 1893, p. 1145, and adopts the statutes of Kansas determining the jurisdiction of probate judges in townsite matters and prescribing the regulations for executing such trust.

2. The only laws in Oklahoma regulating the duties of probate judges in townsite matters are the laws of the United States and the state of Kansas.

3. Commissioners appointed by a probate judge to survey and plat townsites, set apart the lots to occupants and assess the expenses against the several lots, have nothing to do with collecting the costs of such proceedings, and are not authorized to make any rule requiring a deposit from applicants for, or occupants of, lots and all such rules or demands are void and may be ignored by lot claimants.

4. Such commissioners are not authorized to swear witnesses, or sit as a court and hear contests, but it is their duty from actual observation and such proof as claimants may submit to them, to determine who were *bona fide* occupants of lots at the date of the entry of the townsite, and report said proceedings to the probate judge.

5. Filing certificates issued by the probate judge prior to entry of land are without authority; have no legal force, and persons accepting them do so at their own peril, and must suffer the result of their own stupidity.

6. A petition which shows that the plaintiff is qualified to enter public lands; that he has actually settled upon, occupied and improved a town lot from the day it was subject to settlement to the date of bringing suit; that he filed his application with the townsite commissioners for a deed; that he was the only occupant of the lot; that he tendered all fees and assessments, and that the commissioners refused to hear his claim because he refused to deposit twenty-five dollars with them as security for costs, and that the lot was wrongfully deeded to another, and offers to reimburse the defendant for all assessments and costs paid by him, presents a case for equitable interference.

7. A person who makes a motion for a new trial, and bases it on alleged causes, is not entitled to a new trial, as of right, on such motion.

*Error from Lincoln County.*

*L. E. Payne* and *H. R. Thurston*, for appellant.

*T. S. Jones, S. D. Decker* and *John Devereaux*, for appellee.

The opinion of the court was delivered by

BURFORD, J.: The appellee, Abraham Parker, brought his action in the district court of Lincoln county to charge James Brown, the appellant, as trustee for lot No. 12, in block No. 43, in the city of Chandler, Oklahoma Territory.

It appears from the petition that the townsite of Chandler was set apart by the secretary of the interior as a county seat and was part of the lands purchased from the Sac and Fox Indians. That the townsite was opened to settlement on September 28, 1891,

and was entered by the probate judge of said county for the use of the occupants thereof, on the 9th day of November, 1891, and on November 30, 1891, said probate judge appointed three commissioners to set apart to the persons entitled to the same the several lots and parcels of land included within the townsite entry. The appellee was a qualified settler and did, on the day that said lots were opened to settlement, select, settle upon and establish his residence on said lot and resided thereon continuously until the date of the bringing of this action, and that no other person had ever occupied the same; that he filed his application with said townsite commissioners for said lot, and that there were other claimants to said lot; that on the day fixed for a hearing of the several claims to said lot, the commissioners refused to hear his cause unless he would first deposit with them a sum of money sufficient to pay all expenses of the commissioners and other costs of one day's trial. · This appellee refuse to do and·the commissioners awarded the lot to the appellant, Brown, and the same was conveyed to him by the probate judge.

It is further alleged that the plaintiff offered to pay all legal assessments against said lot, but the tender was not accepted. He now offers to bring into court the costs, fees and expenses paid by Brown, and demands that Brown ·be compelled to convey the legal title to him.

To this petition the defendant demurred, setting up three causes of demurrer, viz:

"1. The court has no jurisdiction of the subject matter of the action.

"2. The petition does not state facts sufficient to constitute a cause of action.

"3. There is a defect of parties defendant."

The court overruled the demurrer, to which defendant excepted—trial had by the court—a finding and

judgment for Parker and a commissioner appointed to convey the legal title in said lot to him—from this judgment Brown appeals.

A number of questions are presented by the record. This townsite was entered under §§ 2387, and 2388, R. S. as provided in § 17, act of March 3, 1891, 26 Stat. L. 1026. This section authorized the secretary of the interior to designate the county lines in Oklahoma, establish and reserve county seats, which shall be entered under §§ 2387, and 2388, R. S. U. S.

Section 2387 provides, "that the execution of the trust as to the disposal of the lots in any town entered under its provisions, and the proceeds of the sale thereof shall be conducted under such regulations as may be prescribed by the legislative authorities of the state or territory in which the same may be situated."

Congress, by express authority, permitted the legislatures of the several states and territories to regulate the execution of the trust imposed by the statute on probate judges. Pursuant to this authority the legislature of Oklahoma passed an act which took effect December 2, 1890, stat. 1893, 1145, which act is very complex and covers a number of subjects. It attempts to divert the proceeds of sales of lots from the purposes authorized by congress, and also attempts to regulate the practice before, and appeals from, the board of townsite trustees appointed by the secretary of the interior under the laws of congress.

At the same same session of the Oklahoma legislature, a number of laws were passed extending the jurisdiction of probate judges in divers matters, and congress in § 17, of the act of March 3, 1891, *supra*, ratified these acts, except the townsite act, which was especially repudiated, and the terms of § 2387 modified and superceded by the latter act, which provides:

" That in addition to the jurisdiction granted to the probate courts and the judges thereof in Oklahoma Territory by legislative enactments, which enactments are hereby ratified, the probate judges of said territory are hereby granted such jurisdiction in townsite matters and under such regulations as are provided by the laws of the state of Kansas."

By this provision congress intended to repudiate the act of Oklahoma on this subject, and adopt for the government of probate judges, in townsite matters in Oklahoma, the laws of the state of Kansas, by giving to said judges "such jurisdiction in townsite matters and under such regulations as are provided by the laws of the state of Kansas." The statute has the effect to exclude any other jurisdiction in such matters or any other regulations.

So in determining the rights of persons, the powers of the commissioners and the authority of probate judges in townsite matters, we must look alone to the laws of the United States and of the state of Kansas. The townsite act of Kansas has been frequently construed by the court of highest resort in that state, and congress adopted these laws for us with these judicial constructions in view, and we are not left in the dark as to their true intent, force and effect.

The legislative authority permitted by congress does not extend to the conferring of any rights to the public lands; the rights accrue under and by virtue of the laws of congress. The legislature can only regulate the manner of determining the rights of occupants or claimants to lots and direct how the trust imposed in the probate judge shall be executed.

Under the laws relating to townsites, under which the town of Chandler was entered, the commissioners had no power or authority to make rules which would affect the substantial rights of any occupant or claimant to a lot; and the law gave them no authority to require deposits from persons seeking to acquire title.

The only authority given the commissioners, under the laws of Kansas, was, after publishing notice of the time, to proceed to set off to the persons entitled to the same according to their respective interests the lots, squares or grounds to which each of the occupants were entitled; after this was done, and not before, it was their duty to appraise the several parcels, or lots, according to their respective values, and proceed to levy a tax or assessment upon the lots and improvements thereon, according to their value, sufficient to raise a fund to reimburse the parties who had purchased the townsite from the government, together with all the expenses connected with the proceedings. They were then required to return all their plats, papers, assessments and awards to the probate judge. It was then the duty of the judge to proceed to collect the assessments and to convey to the occupants, as reported by the commissioners, the several tracts as their respective interests might appear, on payment of the required assessment.

The commissioners took no interest in the lands' and were given no authority to examine witnesses, or hear contests, but the law contemplates that they will, from actual view and observation, and such proof as may be furnished them by claimants, ascertain who were the occupants of the lots at the date of the entry and make their report accordingly.

They had nothing to do with collecting fees or expenses, and had no authority to either receive the same or require a deposit for any purpose, and any requirement of this character was a usurpation of authority, and a claimant for lots in the townsite was not bound to recognize it, and might ignore it without forfeiting any substantial rights. The acts of the commissioner were not conclusive, but any party whose substantial rights were adversely affected by their action might go into a court of equity to have

his rights determined under the laws of the United States and the laws governing the execution of the trust.   There is no appeal from their action to any court or tribunal having appellate powers over them, and hence the plaintiff in the case at bar adopted the only remedy left open to him.

The district court had the authority to hear and determine the matters set forth in his petition; hence the first cause for demurrer was properly overruled.

We think the complaint alleges all the facts necessary to entitle the plaintiff to the relief prayed for. He alleges his qualifications to enter public lands; that he actually occupied, improved and resided upon the lot in question; that he made application to the commissioners and probate judge for title; that he tendered the assessments; that he was denied the award and that the lot was conveyed to the defendant, and he offers to reimburse the defendant for the assessments paid by him—this makes a good case for equitable interference.

The commissioners were neither necessary nor proper parties to the action; they never had any interest in the subject matter, and their connection with the proceedings terminated when they made their report to the probate judge.

The laws of the United States gave the lots embraced in the townsite to the occupants at the date of the entry by the probate judge.   A right acquired by occupancy may be transferred, and the transferee may acquire title, but he must be an occupant, either actual or constructive, at the date of the entry.   He can not abandon his occupancy and permit another to take actual possession without objection, and remaining out of possession without any impovements expect to acquire title; the law does not contemplate such occupancy.   It does not evidence good faith.

There was no error in the court overruling the demurrer to the petition.

The only question presented by the motion for new trial which we deem of sufficient weight to warrant consideration, is the sufficiency of the evidence to sustain the finding and judgment.

The evidence shows that shortly after the opening of the townsite, there was some confusion and uncertainty about the surveys and location of lots, and that several persons laid claim to the lot in dispute and attempted to settle upon it. The plaintiff, within a short time after noon of the day of the opening, placed his tent upon the lot, afterwards fenced it, and made his residence upon it and continued in actual possession of the lot until the time of the bringing of this action. The defendant, Brown, purchased a settlement right from one Kinly, attempted to place some lumber on the lot that day, and afterwards had some holes dug for posts, and then made no further effort at improvement or occupancy. This was an abandonment of his rights if he ever acquired any, and the evidence is conclusive that at the date of the townsite entry, the plaintiff, Parker, was the only occupant of the lot. It seems that Brown got some kind of a "filing," as it was termed, from the probate judge, and possibly relied upon such instrument and made no further efforts to maintain his occupancy by settlement, possession or improvement. Such filings were unauthorized by any law of the United States, or rules of the land department, and persons who procured them, or took them, did so at their own risk, and if they relied upon them must bear the consequences of their own stupidity. The evidence is abundantly sufficient to sustain the finding and judgment of the court.

For the authorities supporting the views herein expressed we refer to—

*Rothborn vs. Sterling*, 25 Kas. 444.

*Johnson vs. Towsley*, 13 Wall. 84.
*Rector vs. Gibbons*, 111 U. S. 276.

It is contended by counsel for appellant that this being an action affecting the title to real estate, he was entitled to a new trial, as of right, and he cites some Kansas authorities in support of his theory.

This cause was begun while the Indiana procedure was the law in this territory, and it must be tried and tested by that code.

Under our code of 1890, adopted from Indiana, one might have a new trial, as of right, when the title of real estate was involved, on motion within a year, and upon executing an undertaking with approved sureties that he would pay all costs and damages that might be recovered against him in the action. The filing and approval of this undertaking was a condition precedent to granting a new trial. No such motion or offer was made in the court. The motion for a new trial was for causes assigned, and on such a motion the court cannot grant a new trial, as of right.

*Koile vs. Ellis*, 16 Ind. 301.

We find no error in the record. The judgment is affirmed at costs of appellant.

Bierer, J., not sitting; all other Justices concurring.