**RICHARDSON v. CARR et al.**

No. 6432—Opinion Filed Dec. 4, 1917.

Rehearing Denied March 12, 1918.

(171 Pac. 476.)

(Syllabus.)

**1. Judgment — "Direct Attack" — What Constitutes.**

A "direct attack" upon a judicial proceeding is any attack within the issues made by the pleadings which has for its purpose the annulment, vacation, correction, modification, declaring void, or avoiding the effect of such proceeding; but the questions raised by and the effect of such attack is determined by the manner of the same, the time of the same, the parties thereto, and the grounds therefor, as well as by point of the attack specified by the attacking party and the relief demanded.

**2. Same — "Collateral Attack" — What Constitutes.**

A "collateral attack" upon a judicial proceeding is an objection incidentally made to the same in the course of a subsequent proceeding, which attack presents an issue collateral to the issue made by the pleadings in the latter proceedings; and its effect is to affirm that such prior proceedings are void upon the face of the mandatory record in the case in which they were had and to require a decision as to whether this is so.

**3. Same — Direct Attack — Form.**

There are different species of direct attack upon judicial proceedings, and each species presents for examination and correction only such errors or defects therein as the law authorizes in the particular attack that is made; that is, such errors and defects as the law authorizes to be examined and corrected, in view of the manner of the attack, the time of the same, the parties thereto, and the grounds alleged therefor.

**4. Ejectment — Nature of Proceeding.**

Where a plaintiff who has never voluntarily parted with his title to real estate brings an action to recover the same under section 4492, Stats. 1893 (section 4928. Rev. Laws 1910), and couples therewith an allegation that certain prior judicial proceedings under which the defendants, who are in adverse possession, claim title, are void upon the face of the mandatory record thereof, and prays for their cancellation, his suit, in so far as it is a direct attack upon such proceedings, is in equity, and presents for determination the question of the validity of such prior proceedings upon the face of the mandatory record therein, and also upon any undisputed fact shown without objection.

**5. Judgment — Collateral Attack — Suit in Equity — Issues.**

A suit in equity attacking prior judicial proceedings upon the grounds of defects apparent upon the face of the mandatory record thereof and praying for the cancellation of such proceedings, although direct, presents no question as to such defects except as to whether they show that such proceedings are void upon the face of such record.

**6. Process — Publication — Nonresidents.**

Under section 3950, Stats. 1893 (section 4722, Rev. Laws 1910), an action brought against a nonresident of the territory of Oklahoma having property in such territory to be taken by attachment is one of a distinct and independent class of cases in which service of summons may be made upon the defendant by publication.

**7. Same — Publication of Summons — Affidavit.**

An affidavit for service of summons by publication under sections 3950 and 3951, Stats. 1893. (Sections 4722 and 4723, Rev. Laws 1910). which shows that it is made in one of the class of cases specified in the first-mentioned section. and states that the

plaintiff, with due diligence, is unable to make service of summons upon the defendant otherwise than by publication, is sufficient to support a judgment based upon such service by publication, when attacked in a subsequent and distinct proceeding upon the alleged grounds that the omission of such affidavit to expressly state that the affiant did not know and had no reason to believe that such defendant was at the time of his affidavit within said territory rendered such judgment void upon the face of the mandatory record in such case, as this omitted statement is inferable, and will be inferred from the affidavit as made as against such attack.

## 8. Attachment—Levy—Return — Description of Property—Cure by Judgment.

Where the return of a sheriff upon a writ of attachment shows that he levied the same upon lots of certain numbers in a certain city in a certain county of Oklahoma as the property of the defendant in such attachment, but omits to show in what block such lots are situated, or to otherwise identify them as against the possibility that such defendant may own other lots of the same numbers in such city, such defect in such description is cured by the judgment of the trial court foreclosing the attachment lien, and describing said lots as in a certain block in such city, in which the defendant in the attachment proceeding then owned lots of such numbers, when the subsequent proceedings, including the order confirming the sheriff's sale, and the sheriff's deed were regular and fully described said lots, as against an attack upon such proceedings in a subsequent and distinct proceeding upon the alleged grounds that such prior proceedings are void upon the face of the mandatory record.

## 9. Same—Return—Omissions—Validity.

In an attack upon attachment proceedings as void upon the face of the mandatory record, made in a subsequent and independent proceeding, the mere fact that a sheriff's return upon the order of attachment in the proceeding attacked does not state clearly that, in attaching certain lots in a city, he fully complied with the requirements of section 4076, Stats. 1893 (section 4820, Rev. Laws 1910), by leaving a copy of the order of attachment with the occupant of such lots, or, if there was no occupant in a conspicuous place thereon, does not show want of jurisdiction in the proceedings attacked, and that a sheriff's deed in accord therewith is void.

(a) The testimony of the officer who executed such order of attachment, adduced in such subsequent proceedings by the party defending such prior proceedings more than 15 years thereafter, to the effect that there was a little dwelling house, at which there were some children, upon said lots, and that he thought the same were occupied by a certain party who was then contesting the attachment defendant's right to the same under Act Cong. May 14, 1980, c. 207, 36 Stat.

109 (U. S. Comp. St. 1901, p. 1463; U. S. Comp. St. 1916, § 5029), etc., providing for town-site entries in Oklahoma, and referring to a portion of his return which shows that he could not find the attachment defendant in his county, and that he left a copy of the order of attachment upon the premises, that he probably posted the same upon the front of such dwelling house, as a conspicuous place upon said premises, does not show that he so far failed to comply with requirements of said section of the statute as to render such attachment proceeding void upon such attack, if his testimony must be taken as sufficient to show that said lots were in fact occupied.

## 10. Limitation of Actions—"Commencement of Action"—Service of Process.

Where a petition and affidavit for service of summons by publication and affidavit for attachment are filed, and an order of attachment is issued and served upon the same day, but the first publication of summons was not made until the third day thereafter, such action is deemed commenced within the meaning of the provisions of section 4068, Stats. 1893 (section 4812, Rev. Laws 1910), that "the plaintiff in a civil action for the recovery of money may, at or after the commencement thereof, have an attachment against the property of the defendant," etc., when tested by the provision of section 3892, Stats. 1893 (section 4659, Rev. Laws 1910), where the service of such summons by publication is duly completed.

## 11. Attachment—Realty — Attachable Interest.

Where a claimant of lots in a town site in Oklahoma City under the act of Congress of May 14, 1890, and other acts relating to such town sites has, after all contests have been finally decided in his favor, been adjudged entitled to such lots, and he has paid all fees and charges, although under protest, so that nothing remains to be done on his part to entitle him to a deed from the proper townsite board, conveying said lots to him, which deed has been duly executed by such board, but delivery of such deed to him is withheld pending a decision by the Department of the Interior of the United States upon his protest against the exaction of such fees and charges from him, he has both the legal and equitable title to such lots, and therefore an attachable interest in the same.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by W. H. Richardson against Mrs. H. M. Carr, Mrs. Lalla Gray, Mrs. Julia Renaker, H. P. Hickey, Julia K. Goff, H. A. Childs, the Interstate Mortgage & Trust Company, Roy S. Dodd, James D. Kivlehan, Lottie Swatek, Mrs. Willie P. Turney, and Emily Childs for possession of and to remove cloud of certain deeds from the west 50 feet of lots 1, 2, 3, 4, 5, and 6 of Margaret McKinley's subdivision of lots 14, 15, and 16 (orig-

inally platted as lots 15 and 16) of block 24 in Oklahoma City as shown by the recorded plat thereof, and for the adjustment of equities between the plaintiff and defendants in respect to the value of the latter's use and occupation of this property and the value of the improvements made by them thereon in the event of plaintiff's recovery of the same. Judgment upon plaintiff's dismissal in favor of H. P. Hickey as to said part of lot 6. Judgment upon the disclaimer of the Interstate Mortgage & Trust Company dismissing its cross-petition. Judgment against the plaintiff and in favor of Mrs. Willie P. Turney as to said part of lots 1 and 2, and' in favor of Lottie Swatek as to said part of lot 3, and in favor of Roy S. Dodd and James D. Kivlehan as to said part of lot 4, and in favor of Julia K. Goff as to said part of lot 5, and also against the plaintiff and in favor of these defendants and each of them for costs of suit. The plaintiff brings error. Affirmed.

S. A. Horton and Roy F. Ford, for plaintiff in error.

Keaton, Wells & Johnston, H. N. Boardman, Ames, Chambers, Lowe & Richardson, and Everest & Campbell, for defendants in error.

THACKER, J. The plaintiff in error, as plaintiff in the trial court, commenced this action on May 31, 1911, against the defendants in error for the possession of and to remove the cloud of certain deeds from the title to the west 50 feet of lots 1, 2, 3, 4, 5, and 6 of Margaret McKinley's subdivision of lots 14, 15, and 16 (the same being lots that were originally platted as 15 and 16) in block 24 in Oklahoma City as shown by the recorded plat thereof. The plaintiff's petition, treated as amended in a few comparatively unimportant respects in order to make it conform strictly to the agreed or the undisputed facts upon which he predicates his action, and so as to include some of his admissions otherwise than in his pleadings, alleges, in effect:

That he acquired the title to said original lots 15 and 16 under the provisions of an act of Congress of May 14, 1890, entitled "An act to provide for town-site entries of land in what is known as 'Oklahoma,' and for other purposes" (26 Stats. at L. 109, c. 207, the same being U. S. Comp. Stats. 1901, p. 1463; U. S. Comp. St. 1916, § 5029), and other acts to which reference is therein made; that on September 3, 1890, town-site board No. 2 of Oklahoma City made application to purchase the quarter section, including said lots, of the United States for the use and benefit of its occupants; that on September 6, 1890, said town-site board filed its plat of the same, designating all the lots involved in this action as Nos. 15 and 16 in said block 24; that on October 1, 1890, the United States, by and through the President, issued its patent to said board as trustees for the use and benefit of the occupants of said quarter section, according to their respective interests; that the plaintiff, as an occupant of said lots within the meaning of said act of May 14, 1890, was, on September 3 and October 1, 1890, entitled to acquire the title to the same from the United States through its officers or agents, the said town-site board as such trustees; that plaintiff's acquisition of such title was delayed by a contest for said lot 15 and by another for said lot 16, which were finally decided in his favor on March 28, 1895, except for a motion for review of that decision which was decided in his favor on July 6, 1895; that on July 23, 1895, the Commissioner of the General Land Office ordered each of the two cases of contest against the plaintiff closed, and on July 30, 1895, he was officially notified that the lots in controversy "had been awarded to him, and that upon [his] payment of the fees and assessments fixed against the same a deed" of conveyance to him would be duly executed and delivered; that on August 22, 1895, such deed was executed and acknowledged and ready for delivery to plaintiff upon his payment to said board of fees and charges to the amount of $52.50, as required by the notice he had received; that on August 31, 1895, the plaintiff deposited with said board said $52.50 under protest against the said fees and charges against said lots, and appealed from the decision of said board against him in this respect, pending which the board withheld actual delivery of the deed to him; that on September 30, 1895, the Secretary of the Interior had ruled that the said fees and charges were proper, and on that date said deed was mailed to him, and after October 7, 1895, the said deed was actually delivered to him, but was thereafter lost; that on May 31, 1897, a second and substitute deed (bearing a certificate to the effect that the original deed was mailed, and thus delivered to the plaintiff on September 30, 1895) was issued to the plaintiff, and on July 30, 1897, was recorded at page 84 of Book 4 of the Records of Deeds for Oklahoma County; that plaintiff acquired the title to said lots about, but after, October 7, 1895, and not before; that the plaintiff has never conveyed nor otherwise divested himself of the title thus acquired, and is entitled to the possession of the said lots, but the de-

fendants unlawfully keep him out of such possession; that the defendants wrongfully claim title to and right of possession of this property through a succession of pretended, but ineffective, transfers beginning with a pretended, but void, judicial sale in an action commenced on September 3, 1895, in which A. J. Beale was plaintiff and the plaintiff in the instant case was defendant, and which sale was predicated upon a pretended, but void, attachment on said September 3, 1895, of said original lots 15 and 16, and is evidenced by a pretended, but void, sheriff's deed executed on June 16, 1896, in said action, and recorded on July 18, 1896, falsely purporting to convey said lots to said A. J. Beale, who on February 17, 1898, executed a deed purporting to convey the same to one John Summerfield; that defendants also claim title through a pretended, but void, recorded tax deed of November 22, 1897 (on account of taxes unlawfully assessed for the year 1893 against said lot 15), from the county treasurer of Oklahoma county to Louella Brogan, whose pretended title was passed through the said John Summerfield to some of the defendants, and through another pretended, but void, recorded tax deed of November 22, 1897 (on account of taxes unlawfully assessed for the year 1894 against said lot 15), from the county treasurer to E. H. Cooke, whose pretended title passed through the said John Summerfield to some of the defendants, and though still another pretended, but void, recorded tax deed of February 5, 1897 (on account of taxes unlawfully assessed for the year 1893 against said lot 16), from the county treasurer to one W. J. Patterson, whose pretended title passed through said John Summerfield to some of the defendants; that each of the defendants claim title through the said John Summerfield, as a common source, whose pretended muniments of the title were and are dependent upon said sheriff's and said county treasurer's deed for their effectiveness, and are therefore ineffective; that the said sheriff's deed was and is void, and conveyed no title, because the judgment of November 7, 1895, to satisfy which it was issued, was and is void for want of jurisdiction of the subject-matter and of the person of the defendant, the plaintiff here; that the mandatory record, that is, the record proper of the trial court, shows upon its face that the said judicial proceedings in the Beale case, upon which the sheriff's deed was and is dependent for its validity, were and are void in the following respects, to wit: (1) Void in that the affidavit of September 3, 1895, in the Beale case, for the service of summons upon the

defendant there (the plaintiff here) by publication does not show that Beale's case was one of those in which the service of summons by publication is authorized by section 3950, Stats. 1893 (section 4722, Rev. Laws 1910); (2) void in that, although the affidavit of September 3, 1895, in the Beale case, for services of summons upon the defendant there (the plaintiff here) by publication states that the plaintiff "is, with due diligence, unable to make personal service of summons upon the defendant," and "that the defendant is a nonresident of this territory, having in this territory property and debts owing him, sought in the above action to be taken in attachment," it omits to show that defendant (the plaintiff here) was out of the jurisdiction of the court so that personal service of summons could not be had upon him within the territory of Oklahoma, and omits to show the facts constituting the diligence to which said affidavit refers; (3) void in that the pretended levy of the writ of attachment on September 3, 1895, was not in accord with law as appears from the officer's return thereon, which is as follows:

"Received this order September 3, 1895. September 3, 1895, I executed same by going to the place where the property of the within-named defendant, W. H. Richardson, was found, and there at 6 o'clock p. m. of said day, in the presence and hearing of J. L. Lyle and J. H. Miller, two credible persons, declared that by virtue of said order I attached said property, at the suit of the within-named plaintiff, and with J. L. Lyle and J. H. Miller, two householders of the county, who were by me first duly sworn, did make a true inventory and appraisement of all said property attached, which inventory and appraisement was by me and said householders signed, and is hereunto annexed and returned with this order. I left a copy of this order on the premises. I cannot find the within defendant, W. H. Richardson, in my county. I delivered a copy of said order of attachment to ———, in whose possession it was found. I cannot find the within-named defendant in my county"

—duly signed by the proper officer, and the appraisement accompanying such return as a part thereof is as follows:

"We, C. H. De Ford, sheriff of said county of ———, J. L. Lyle and J. H. Miller, two householders of said county, the said ———, being duly sworn, do truly inventory and appraise the following property attached as the property of W. H. Richardson on an order of attachment issued in a suit of the said A. J. Beale against the said W. H. Richardson, now pending in said court for the said county of Oklahoma: Lots 15 and 16. Oklahoma City, O. T. Appraised at $500 00. J. L. Lyle, J. H. Miller"

—which return does not sufficiently describe the property levied upon nor show, as required by section 4076, Stats. 1893 (section 4820, Rev. Laws 1910), that a copy of the order was left with the occupant, or, if none, in a conspicuous place thereon; and the officer who served the writ testified, as a witness for defendant, to the effect that, although he thought the attached property was occupied by one of the said contestants of plaintiff's original claim to this property, and there were some little children, but no adults, there when he served the writ, he served the same by posting it (probably in the most conspicuous place), upon the front of the little dwelling house situated thereon; (4) void in that the time of the first publication of summons on September 5, 1895, was the time of the commencement of that action, and the attachment antedated the same and was premature; and (5) void in that the defendant in that action (the plaintiff here) had no attachable right, title, or interest in or to said property when the pretended writ of attachment was pretended to be levied thereon; that the said tax deeds were void and conveyed no title because at the time of the assessments of these lots for taxes the title to the same was in the United States or said board of town-site trustees as its officers and agents, and had not passed to the plaintiff so as to be subject to taxes; that some improvements have been placed upon said property, although the plaintiff does not know who placed the same there, but he should and is willing to reimburse the proper parties; that some taxes have been paid on said property, although the plaintiff does not know who paid them nor the amount of the same, but he should and is willing to reimburse the proper parties; that the defendants have occupied and used said property during the ten years next preceding the institution of this suit, and the value of such use and occupancy is $100,000, and that the plaintiff is entitled to the vacation of the Beale judgment, to the cancellation of said sheriff's and said county treasurer's deeds purporting to convey said property, to the possession of said property, and to recover said $100,000 as the value of defendant's wrongful use and occupancy of the same. The petition prays for such vacation, for such cancellation, for such possession, and for an adjudgment of equities in respect to the value of the improvements made and taxes paid upon the premises by the defendants and the value of its use and occupancy by them.

The plaintiff compromised his action against H. P. Hickey and dismissed the same so as to permit him to take judgment for said part of lot 6. The Interstate Mortgage & Trust Company filed a disclaimer, and its cross-petition was dismissed. Some of the other defendants apparently sustain no important relationship to the controversy involved in this case, and there will be no occasion to mention their position in the same. Mrs. Willie P. Turney, the claimant of said part of lots 1 and 2, Lottie Swatek, the claimant of said part of lot 3, Roy S. Dodd and James D. Kivlehan, the claimants of said part of lot 4, and Julia K. Goff, the claimant of said part of lot 5, who appear to be the persons in possession of the property in controversy and the last of the successive claimants of title under said sheriff's deed and said tax deeds, and by virtue of adverse possession, and the only such claimants at the time of and since the commencement of this action, answered separately, each of whose answers is treated as amended in a few comparatively unimportant respects to conform to the agreed or undisputed facts, alleging the same substantive facts as are alleged as above stated in the plaintiff's petition in respect to the source of their alleged title, except that they say in effect that the plaintiff acquired an equitable and thus an attachable and a taxable, interest in, or title to the property on September 3, 1890, when the town-site board filed its application to enter the same, or, if not, on October 1, 1890, when the same was conveyed to the town-site board in trust for him which ripened into a legal title on August 22, 1895, when said town-site board's deed to him was executed, or, if not, on August 31, 1895, when he had performed all conditions precedent to his right to an actual delivery of said deed, or, if not, on September 30, 1895, when said deed was mailed to him, or, if not, on September 30, 1897, when the second and substitute deed was mailed to him, or, if not, after October 7, 1897, when the second and substitute deed was actually received by him, and certainly before July 30, 1897, when said deed was by him filed for record in the office of the register of deeds of Oklahoma county, and that the said sheriff's deed and the said treasurer's tax deeds and all the proceedings resulting therein were valid and divested plaintiff of his title to the property in question, and further alleging that at the commencement of this action each, claiming title under said sheriff's and county treasurer's deeds, had continuously been in the quiet and peaceful possession and paid all the taxes upon the property claimed by him or her for 14 years, 11 months and 15 days next preceding the commencement of this action, during all of which time the plaintiff herein,

W. H. Richardson, has never asserted or made claim of title to the same or any part thereof, so that the latter is precluded by the equitable principles of the doctrine of laches and of estoppel from prosecuting the same in view of the facts hereinafter shown; that while in such possession of such property and relying upon the silence and acquiescence of the plaintiff therein they have not only paid said taxes, but have made improvements upon the same as follows: Mrs. Willie P. Turney built and owns a two-story brick business house upon lots 1 and 2 of the value of $7,500; Lottie Swatek built and still owns one-half of a three-story brick building upon lot 3, which building is of the value of $3,000 or $3,500, and the other half of the said building is upon lot 4, afterwards sold by her to Roy S. Dodd and James D. Kivlehan; Roy S. Dodd and James D. Kivlehan paid for and own one-half of the last said building, the same being situate upon lot 4; and Julia K. Goff built and owns a two-story brick building upon lot 5 of the value of $4,000; that plaintiff's action is "for the recovery of real property sold on execution" and is "bought by the execution debtor," more than "five years after the date of the recording of the deed made in pursuance of such sale," within the meaning of the first subdivision of section 3888, Stats. 1893 (section 4655, Rev. Laws 1910), and is brought more than two years after the recording of said tax deeds within the meaning of the third subdivision of said action, and that plaintiff is not entitled to maintain his action because of these provisions of the statute.

The plaintiff replied to the answer of each defendant denying each allegation of the same that is inconsistent with the allegations of his own petition, and further alleging that the sale upon which the aforesaid sheriff's deed was based was and is absolutely void, in that it appears upon the face of the proceeding in the case in which the same was had that the court did not have jurisdiction of the subject-matter nor of the person of this plaintiff as defendant in that case. There was a stipulation as to certain facts which corrected some error of minor importance in the pleadings as they originally stood, and, in effect, eliminated plaintiff's denial of the substantive facts alleged in defendant's answers, but which need not be incorporated in this opinion, for the reason that we have stated the pleadings as if amended to accord with this stipulation, and, as so amended, the pleadings of the parties show a perfect agreement in respect to the substantive facts in this case.

The judgment in the case of A. J. Beale against the plaintiff in the instant case, among other things, recited:

"And the court finds that due and legal service by publication has been had upon the defendant in this action. * * *

"And the court further finds that the attachment issued in and of this action was justly obtained, and that the same is a subsisting lien upon the property levied upon thereunder, to wit, lots 15 and 16 in block 24 in Oklahoma City, county and territory of Oklahoma."

The deputy sheriff who served the writ of attachment in question testified at the trial as follows:

"Q. I will ask you to state, Mr. De Ford, if you recall in what way or how you left a copy of this order of attachment on the premises, as stated in your return? A. Well, my recollection is that I put a copy on the building. Q. There was a building on the lots, was there? A. Yes, sir. Q. I will ask you to state if there was anybody in that building? A. Yes, sir. Q. At the time that you posted that copy there? A. My recollection is that there was some children there. Q. Some little children? A. Some little children, but no grown person. Q. No adult. What building was it that you posted the notice on, residence or business building, or what? A. It was a residence. Q. Who, if you recall, was then occupying that as a residence? A. Of course, I ain't sure, but I believe it was Butler; I ain't sure; it has been a long time ago, and I never heard of the case until today, but it seems to me that that is who was living there; I could not be positive; there was some one living there, but I don't know who it was for sure."

On cross-examination he was asked:

"Q. How large was the house? A. Something like 14x18 or 16, something like that, a small house. Q. Now, you say you tacked it up on the front door? A. I couldn't say for sure, that is what I generally done; if I didn't get them in person, I generally tacked the notice up on the building. Q. Which part of the building did you tack this notice on? A. I would probably put it in the most conspicuous place. Q. And where was that? A. That was probably on the south end of the building. Q. Which way did the building front? A. Fronts south."

Plaintiff, while upon the stand as a witness in his own behalf, admitted in effect upon cross-examination that he removed from Oklahoma City to Kentucky in 1893, and has since resided in that state; that after receiving the information contained in the foregoing letter to him he was not in Oklahoma City until the trial of this case, and it appears inferentially that he was not in Oklahoma after he moved away in 1893 until he came back to the trial of this case;

that he had never collected any rents nor paid any taxes on the property in question nor tendered reimbursement to the defendants or their grantors on account of taxes paid by them, and that prior to the commencement of this case he had never communicated to anybody in Oklahoma City occupying or claiming title to these lots or any part of them the information that he owned or claimed them; that in September, 1895, the aforesaid town-site board notified him that it had been served with garnishment summons in a suit against him by the said A. J. Beale; that he learned in 1897 from A. J. Beale that the latter had adversely claimed and had sold the property in question to John Summerfield, and that the same was in the adverse possession of said John Summerfield.

The improvements in question appear to have been made on the lots after plaintiff knew they were adversely claimed, for on January 21, 1903, one G. W. Stevenson wrote him and he received a letter reading as follows:

"Your letter to register of deeds handed me. Replying, will say that the three corner lots you mention are replatted together and worth now about $13,000 to $15,000. Just on the N. W. corner stands the county courthouse, leased for four years. Property has advanced very much in the last four years; the streets around the corner are paved with asphalt. No improvements on the lots you inquire of, and price I mention is the price for naked lots. Any information I can give you will be kindly furnished."

Neither A. J. Beale, the judgment creditor, nor any personal representative of his, was made a party to this case; and it appears from the appeal record in the instant case that there are intermediate transferees under the sheriff's deed who may be liable upon their warranties, if the present occupying and defending claimants are ejected, who were not made parties.

The case was tried to the court without a jury. Judgment was given for the defendants Mrs. Willie P. Turney as to said part of lots 1 and 2, Lottie Swatek as to said part of lot 3, Roy S. Dodd and James D. Kivlehan as to said part of lot 4, and Julia K. Goff as to said part of lot 5; and the plaintiff brings the case to this court for a review of alleged errors therein.

It will be seen from the foregoing that, as the plaintiff originally owned and has never voluntarily parted with his title to the property in question, his right to prevail in this case is unquestionable unless defeated by the purported judicial sale of the property

by the purported tax sale of the same, by the running of the five-year period of limitation provided by the first subdivision of section 3888, Stats. 1893 (section 4655, Rev. Laws 1910), or the two-year period of limitation prescribed by the third subdivision of the same section, or by the equitable estoppel of the plaintiff to maintain this action, or by his laches; and the plaintiff contends that each and all of these defensive positions are untenable.

The plaintiff contends that his attack upon the Beale judgment is direct, and the defendant contends that it is collateral; but it seems obvious that his attack is direct only in so far as it demands equitable relief from judicial proceedings alleged to be void upon the face of the mandatory record, that is, the record proper, of the court in which they were had, so the only question raised by his direct attack is identical with the question raised by any collateral attack which may be thought to be involved.

When the pleadings make what can be and is regarded as an issue presenting the question as to whether a judgment or decree should be annulled, vacated, corrected, modified, declared void, or the effect of the same avoided (as, for instance, under sections 5235-5278, Rev. Laws 1910, and subsequent statutes relating to the same subject, or, in an independent proceeding, under the principles of equity), the mere fact that the attacking party's pleadings present an issue involving the question as to whether he is entitled to additional relief predicated upon an annulment, vacation, correction, modification, etc., of the judgment or decree attacked, or independently of the same, does not prevent the attack from being direct. Nor does it matter whether the attack is by appeal, writ of error, prohibition, injunction, mandamus, bill of review, certiorari, audita querela. etc., under the aforesaid statutes, or, as the case may be, in an independent proceeding upon the principles of equity, if such additional relief is demanded, and is of a character demandable in the same proceeding.

Much confusion has resulted from the erroneous assumption that, if an attack upon a judgment is direct, any error therein may be reviewed and corrected, while the truth is that, although the attack may be direct, only such errors in the judgment attacked can be reviewed and corrected as the law authorizes in the particular attack that is actually made, that is, in view of the manner and time of the attack, the grounds therefor alleged, and the parties plaintiff and defendant in such attack, as well as the point of the attack specified by the attacking party

and the relief demanded. For example, not all judgments that are vulnerable to attack by appeal are vulnerable to attack by a petition in the court rendering them under sections 4464 and 4466 et seq., Stats. 1893 (sections 5267 and 5269 et seq., Rev. Laws 1910), or section 4465 et seq., Stats. 1893 (section 5268 et seq., Rev. Laws 1910), and not all judgments that are vulnerable to attack in any number above indicated are vulnerable to attack by a suit in equity to annul, etc., although a direct attack may be made upon the judgment in either of these different ways.

A judicial proceeding is vulnerable to a direct attack when the attack is predicated upon sufficient grounds and directed against the proper parties in a manner and at a time provided by law for the purpose of annulling, vacating, correcting, modifying, declaring void, or avoiding the effect of such judicial proceeding, whether the same is void or merely voidable; but the same is vulnerable to collateral attack, that is, to an objection incidentally made in the course of a proceeding which presents an issue collateral to the issue made by the pleading, only when it appears from the mandatory record of the court in which it was rendered and without evidence aliunde that the same is void. Brown v. Trent, 36 Okla. 239, 128 Pac. 895; Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184; Roth v. Union National Bank of Bartlesville, 58 Okla. 604, 160 Pac. 505. Also see 2 Hughes on Procedure, 492; 3 Jones, Commentaries on Evidence, §§ 609-612, especially section 611.

As the only question involved in the plaintiff's attack on the judicial proceedings upon which the sheriff's deed is dependent for its validity is as to whether the same is void upon the face of the mandatory record of the court in which it was rendered and the undisputed facts hereinbefore stated, it seems well to call attention at this time to the fact that in Roth v. Union National Bank of Bartlesville, 58 Okla. 604, 160 Pac. 505, this court quoted with approval from the Supreme Court of the United States in the case of the Lessee of Grignon v. Astor, 2 How. 319, 11 L. Ed. 283, as follows:

"But, though the order of the court sets forth no facts on which it was founded, the license to the administrator is full and explicit, showing what was considered and adjudicated on the petition and evidence, and that every requisition of the law had been complied with before the order was made, by proof of the existence of all the facts on which the power to make it depended. * * *

" 'Nor is it necessary that a full or perfect account should appear in the records of the contents of papers on file, or the judgment of the court on matters preliminary to a final order; it is enough that there be something of record which shows the subject-matter before the court, and their action upon it; that their judicial power arose and was exercised by a definitive order, sentence, or decree.' "

And in the Roth Case this court also quoted with approval from the case of United States to Use of Hine et al. v. Morse et al., 218 U. S. 493, 31 Sup. Ct. 37, 54 L. Ed. 1123, 21 Ann. Cas. 782, as follows:

"If the court was one of general, and not special, jurisdiction, if under its inherent power, supplemented by statutory enlargement, it had jurisdiction under any circumstances to sell the real estate of minors for reinvestment, it had jurisdiction to examine and determine whether the particular application was within or beyond its authority."

The principle underlying the Roth Case and the case from which the foregoing quotations were originally taken is applicable in the instant case; and, keeping in mind that principle in the instant case, it is obvious that the judgment in the Beale case purporting to foreclose an attachment lien upon the property in question, with directions for the sale of the same, followed by an order confirming such sale and directing the sheriff's deed in question, which is in due form, raises a presumption of all the essential jurisdictional facts, which presumption is here attacked only by setting against it what is affirmatively shown by the mandatory record in the Beale case and the other undisputed facts shown without objection in this case.

The foregoing brings us to the inquiry as to whether the mandatory record in the case of A. J. Beale against the present plaintiff, together with the agreed facts, or the undisputed facts to which there is no objection, aside from such record, shows affirmatively that the judgment therein is void.

As to the contention that Beale's affidavit for the service of summons by publication omitted to show and thus negatives the fact that his case was one of those in which such service was authorized by section 3950, Stat. 1893 (section 4722, Rev. Laws 1910), there appears to be no sort of basis for the same, as this statute expressly and explicitly names "actions brought against a nonresident of the state, * * * having in this state property * * * sought to be taken by any of the provisional remedies, or to be appropriated in any way," as a distinct and independent class of cases in which such service is authorized (Richardson v. Howard, 51 Okla. 240, 151 Pac. 887), and the affidavit in

question shows in the language of the statute itself that Beale's case was one of that class; and our attention has been called to no case so much as tending to support such a contention.

It is claimed by the plaintiff that the judicial sale is void because the affidavit for publication of service of summons upon the present plaintiff in the Beale case does not show and thus negatives the fact that an affidavit was made showing that he was out of the jurisdiction of the court, so that personal service of summons could not be had upon him within the same; but, assuming without deciding that, in the state of the record before us, it should not be presumed that, if such affidavit was insufficient, another and sufficient affidavit was duly made and filed (as to which see Rogers v. Miller, 13 Wash. 82, 42 Pac. 525, 52 Am. St. Rep. 20; Bradley v. Drone, 187 Ill. 175, 58 N. E. 304, 79 Am. St. Rep. 214; Lyle v. Horstman [Tex. Civ. App.] 25 S. W. 802), it appears that the affidavit in question must here be regarded as sufficient. This affidavit reads as follows:

"A. J. Beale, being duly sworn, says that he is the plaintiff in the above entitled action; that he is with due diligence unable to make personal service of summons upon the defendant; that the defendant is a nonresident of this territory, having in this territory property and debts owing him, sought in the above action to be taken by attachment."

It would undoubtedly have been better if the affiant had, to avoid all ambiguity, stated in addition to the foregoing statement that he did not know and had no reason to believe that the present plaintiff was within the territory of Oklahoma, but this is inferable, and must here be inferred from his affidavit. He could not properly have made affidavit that the present plaintiff, who was then a nonresident defendant, was not within the territory of Oklahoma unless he had known his actual whereabouts outside of Oklahoma so recently that he could not have come to the territory in the meantime; and it would be unreasonable to require such affiant to ascertain the precise whereabouts of such nonresident defendant before making affidavit and proceeding to make service of summons by publication; in many instances it would be exceedingly difficult or impossible as well as very expensive to locate such nonresident party.

It would also be unreasonable to require any active effort or diligence to make personal service of the summons within the jurisdiction of the court upon a nonresident where the affiant has no knowledge nor reason to think that such nonresident is within such jurisdiction, as, if this was necessary, anything less than the issuance of a summons or the addressing of an inquiry to each county in the state in which he might be found would make such effort absurdly incomplete. The following cases, which include the latest expression of this court upon the question, show that the affidavit under consideration is here sufficient: Reister v. Land, 14 Okla. 34, 76 Pac. 156; Ballew v. Young, 24 Okla. 182, 103 Pac. 623, 23 L. R. A. (N. S.) 1084; Richardson v. Howard, 51 Okla. 240, 151 Pac. 887; Harris-Lipsitz Co. v. Oldham, 56 Okla. 124, 155 Pac. 865.

It is also claimed by the plaintiff, without the support of sufficient reason or authority, that it appears from the imperfect description of the property in the return on the writ of attachment that the writ was not levied as required by law, and that the attachment and the judicial sale based thereon is therefore void. As to this it is to be kept in mind that the levy of an attachment upon land is merely for the purpose of creating a lien on it so as to give the court issuing the order jurisdiction to the end that it may be thereafter applied by the court's order to the payment of the plaintiff's judgment if he obtains one, and that the court thus having control of the property may in its order of sale enlarge the description so as to accurately identify the land. White v. O'Bannon, 86 Ky. 93, 5 S. W. 346; Price v. Taylor, 110 Ky. 589, 62 S. W. 270, 22 Ky. Law Rep. 1945 (see 111 Ky. 976); Veazie v. Parker, 23 Me. 170; Lombard v. Pike, 33 Me. 141; Perry v. Griefen, 99 Me. 420, 59 Atl. 601; Grier v. Rhyne, 67 N. C. 338; Lisa v. Lindell, 21 Mo. 127, 64 Am. Dec. 222; Whitaker v. Summer, 9 Pick. (Mass.) 308; Inman v. Kutz, 10 Watts, (Pa.) 90; Webb v. Bumpass, 9 Port. (Ala.) 201, 33 Am. Dec. 310; Moore v. Kidder, 55 N. H. 488.

It is also contended by the plaintiff that the officer's return of the attachment does not show, as required by section 4076, Stats. 1893 (section 4820, Rev. Laws 1910), but negatives the requirement that a copy of the order of attachment was left with the occupant of the premises, or, if there was no occupant, in a conspicuous place thereon, and that the judicial sale under which the defendants claim title is void for that reason. This return, as already shown by our quotation of the same, recites, among other things:

"I left a copy of this order on the premises. I cannot find the within defendant, W. H. Richardson, in my county. I delivered said order attached to ——, in whose possession it was found."

This return is obviously incompetent and defective: but, as the law presumes that officers do their duty (Leedy v. Brown, 27 Okla. 489, 113 Pac. 117; Eldridge v. Compton, 30 Okla. 170, 119 Pac. 1120, Ann. Cas. 1913B. 1055; Okla. Fire Ins. Co. v. Wagester, 38 Okla. 291, 132 Pac. 1071; Board of Com. v. Field, 63 Okla. 80, 162 Pac. 733; Sou. Surety Co. v. Waits, 45 Okla. 513, 146 Pac. 431; S. W. Surety Co. v. Davis, 53 Okla. 332, 156 Pac. 213; Lusk v. Porter, 53 Okla. 294, 156 Pac. 224), and that a court of such jurisdiction rendering judgment properly found the existence of the essential jurisdictional facts (Hathaway v. Hoffman, supra, and Roth v. Union National Bank, supra), it must be presumed in the instant case that the officer left a copy of the order of attachment with the occupant, or, if the premises were not occupied, posted the same in a conspicuous place thereon as required by the statute. There is nothing in the return which could be construed to negative a performance of duty in this regard. The officer's testimony, if allowable to impeach the effect of the mandatory record upon the ground that it was adduced by the defendants themselves, tends to throw some, but very little, additional doubt upon the question as to whether he fully performed his duty in this regard; but, in view of the presumptions that must be indulged in favor of these judicial proceedings, it hardly seems susceptible of the construction that he did not do so. He testified more than 15 years after the service of the writ of attachment that he thought the premises were occupied by a party who it appears was contesting the right of the present plaintiff to the property. He said there were some little children there when he served the writ. He said it was his recollection that he put a copy of the order on the front of the building, and that he probably put it in the most conspicuous place; and, if it required more than this posting to leave a copy with the occupant, it seems that it should here be presumed that he did more, although his testimony indicates that, after so many intervening years, he had no recollection of doing more. This oral testimony is not sufficient to impeach its validity.

It is contended by the plaintiff that, although Beale's petition and affidavit for service of summons by publication was filed on September 3, 1895, and before the attachment of that date, the time of the first publication of summons on September 5, 1895, was the time of the commencement of this action within the meaning of the provisions of section 4068, Stats. 1893 (section 4812,

Rev. Laws 1910), that "the plaintiff in a civil action for the recovery of money may, at or after the commencement thereof, have an attachment against the property of the defendant," etc., and that the attachment was therefore premature, and thus affirmatively appears to have been and to be void in view of the provisions of section 3892, Stats. 1893 (section 4659, Rev. Laws 1910), which reads as follows:

"An action shall be deemed commenced within the meaning of this article: * * * Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days."

As will be seen, this section 4659 relates expressly to the article on limitation of actions, and not to the article on attachments; but, assuming that the rule it announces should be followed in determining when an action is commenced to authorize an attachment under section 4812, supra, for the sake of uniformity, we think it clear that it must be presumed in this case that Beale faithfully, properly, and diligently endeavored to procure service so that, if his commencement of his action on September 3, 1895, had amounted to no more than an attempt, it must here be deemed to have been commenced at that time under this rule; and in Raymond v. Nix, Halsell & Co., 5 Okla. 656, 49 Pac. 1110, it is held in the second paragraph of the syllabus:

"An action is commenced when plaintiff files his petition and * * * an affidavit for publication, which is thereafter made good by pursuing the requirements of the statute, * * * within 60 days."

It does not appear from the mandatory record under consideration, as contended by plaintiff, nor otherwise, that he was without an attachable interest, but, to the contrary, it appears from the mutually alleged and agreed facts in the instant case, without the aid of any presumption, that the plaintiff had an attachable interest in this property at the time of the levy of the Beale attachment thereon on September 3, 1895, as on August 22, 1895, his right to this property had been finally adjudicated and determined, and a deed to him was duly executed and acknowledged by the town-site board of trustees and ready for delivery to him upon his payment of the requisite fees, and on August 31, 1895, he paid these fees, so

that nothing whatever remained to be done on his part to entitle him to a delivery of that deed, although the same was not mailed to him until September 30, 1895, which last-mentioned date was 27 days after the seizure of the property upon the Beale attachment. As to whether the present plaintiff acquired an equitable right to, and therefore an attachable interest in, this property as early as October 1, 1890, when the President of the United States conveyed the legal title to the board of town-site trustees in trust for him, and sub modo in trust for the United States, is a debatable question; but, as actual delivery of such deeds is not necessary to the passing of title, there appears to be no ground whatever for a denial of the proposition that he acquired both the legal and equitable title to this property at least as early as August 31, 1895, which was three days before the property was attached in the Beale case. United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167; Hussey v. Smith, 99 U. S. 20, 25 L. Ed. 314; Stringfellow v. Cain, 99 U. S. 610, 25 L. Ed. 421; Bockfinger v. Foster, 190 U. S. 116, 23 Sup. Ct. 836, 47 L. Ed. 975; Flanagan v. Forsythe, 6 Okla. 225, 50 Pac. 152; Dist. No. 160 v. Alcott, 31 Okla. 122, 120 Pac. 562; Walter Realty Co. v. Jones, 35 Okla. 272, 129 Pac. 840; Brown v. Parker, 2 Okla. 258, 39 Pac. 567; Chisolm v. Weisse, 2 Okla. 611, 39 Pac. 467; Twine v. Carey, 2 Okla. 249, 37 Pac. 1096; Block v. Morrison, 112 Mo. 343, 20 S. W. 340; Jackson v. Williams, 10 Ohio, 70; Winfield Townsite Co. v. Maris, 11 Kan. 128; Sherry v. Sampson, 11 Kan. 611; Rathbone v. Sterling, 25 Kan. 444; Goldberg v. Kidd, 5 S. D. 169, 58 N. W. 574. Also see Topeka Commercial Security Co. v. McPherson, 7 Okla. 332, 54 Pac. 489, receding from the view expressed in the prior opinion in the same case, 52 Pac. 395.

We think it clear that the judicial proceedings upon which the sheriff's deed depends for its validity in the Beale case is not void upon the face of the mandatory record therein nor because of any fact disclosed by the appeal record in the instant case; and this conclusion makes it unnecessary for us to determine whether, if such proceedings were void, the plaintiff would be precluded from prevailing in the instant case by reason of either or all of the other propositions urged by the defendants against his right to do so.

Affirmed. All the Justices concurring, but SHARP, C. J., and KANE and TURNER, JJ., limit their concurrence to the conclusion reached.